OPINION
ROTH, Circuit Judge:
In this appeal, we are called upon to determine whether Anthony Robinson, when he brandished a firearm in the commission of a Hobbs Act robbery, committed a “crime of violence.” On September 17, 2014, Anthony Robinson was convicted of one count, under 18 U.S.C. § 924(c), of brandishing a firearm during the commission of a crime of violence and two counts, under 18 U.S.C. § 1951(a), of Hobbs Act robbery. On appeal, Robinson asks us to overturn his conviction on the § 924(c) offense on the basis that Hobbs Act robbery is not a “crime of violence.” We conclude that when, as here, the two offenses, robbery and brandishing a gun, have been tried together and the jury has reached a guilty verdict on both offenses, the Hobbs Act robbery qualifies as a crime of violence under the “elements clause” , of 18 U.S.C. § 924(c)(3)(A). Thus, for the reasons stated below, we will affirm Robinson’s conviction on all counts. However, with the agreement of the government, we will remand this matter for further proceedings to determine whether Robinson was properly sentenced as a career offender.
I.
On December 1, 2012, Robinson committed two robberies in Philadelphia, approximately two hours apart. In the first of these robberies, Robinson produced a handgun and demanded all of the money in the cash register from the cashier at a Subway sandwich shop. In the second robbery at. Anna’s Linens store, Robinson again produced a handgun and demanded the money in the register from the store’s cashier. Both robberies were recorded by on-site video surveillance cameras.
The next day, the Subway cashier observed Robinson walking on the street and, recognizing him as the perpetrator from the previous day’s robbery, immediately notified police. After police recovered surveillance video and compared Robinson’s image to that of the robber in the video, Robinson was arrested for the Subway robbery. Suspecting that Robinson *140 might also have been responsible for the Anna’s Linens robbery, a Philadelphia Police Detective prepared a photo array that included a photograph of Robinson. The cashier identified Robinson from the array.
On May 9, 2013, a grand jury returned an indictment charging Robinson with two counts of robbery by means of actual and threatened force, violence and fear of injury, by brandishing a handgun, affecting interstate commerce, in violation of 18 U.S.C. § 1951(a), also known as Hobbs Act robbery, and two counts of using and carrying a firearm during and in relation to a cidme of violence, in violation of 18 U.S.C. § 924(c). Prior to trial, Robinson moved to suppress, inter alia, the photo array identification made by the Anna’s Linens cashier. This motion was denied. Robinson also submitted a letter to the District Court requesting to proceed pro se. During an ex parte hearing to consider this request, Robinson decided to proceed with counsel. Later, following a hearing on his motion to suppress, Robinson made an oral request to proceed pro se. The court directed. Robinson to file a motion. No motion was filed.
Following a two-day trial, Robinson was convicted of both robberies and of brandishing a firearm during and in relation to the Subway robbery. Robinson was sentenced as a career offender based on a 1990 Pennsylvania robbery conviction and a 2009 Maryland carjacking conviction. This appeal followed.
II.
Robinson raises four issues on appeal: (1) his conviction under 18 U.S.C. § 924(c), which requires that Hobbs Act robbery qualify as a “crime of violence” as it is defined therein; (2) the District Court’s denial of his motion to suppress the photo array identification; (3) the District Court’s failure to conduct a hearing pursuant to Faretta v. California[1] in response to Robinson’s request to proceed pro se; and (4) Robinson’s “career offender” status, which requires that he have two prior convictions that meet the definition of “crime of .violence” set forth in the Sentencing Guidelines, U.S.S.G. § 4B1.1(b). The District Court had jurisdiction over Robinson’s case pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 of Robinson’s challenges of his conviction and pursuant to 28 U.S.C. § 3742 of Robinson’s sentencing challenge. We will focus our discussion on Robinson’s challenge of his § 924(c) conviction.
III.
Robinson was convicted under 18 U.S.C. § 924(e) of brandishing a firearm during and in relation to the Hobbs Act robbery of the Subway store. On appeal, Robinson argues that Hobbs Act robbery is not a crime of violence as required for a conviction under § 924(c). Because Robinson raises this issue for the first time on appeal, we will review for plain error.[2]
18 U.S.C. § 924(c)(3) defines a “crime of violence” as a felony that
(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[3]
*141 These clauses are known as the “elements clause” and the “residual clause,” respectively. Robinson asks us to hold that Hobbs Act robbery is not a crime of violence under the elements clause and that the residual clause is void for vagueness in light of the Supreme Court’s decision in Johnson v. United States.[4] Because we conclude that Robinson’s Hobbs Act robbery is a crime of violence under the elements clause, we will not address Robinson’s challenge to the residual clause.[5]
A.
Both Robinson and the government suggest that our analysis under the elements clause should be guided by the so-called “categorical approach.” We do not agree that the categorical approach applies here. When the predicate offense, Hobbs Act robbery, and the § 924(c) offense are contemporaneous and tried to the same jury, the record of all necessary facts are before the district court. The jury’s determination of the facts of the charged offenses unmistakably shed light on whether the predicate offense was committed with “the use, attempted use, or threatened use of physical force against the person or property of another.” The remedial effect of the “categorical” approach is not necessary.
We can best explain our conclusion here by beginning with a review of the origin of and the reasons for the “categorical” approach. The categorical approach emerged as a means of judicial analysis in Taylor v. United States.[6] Taylor involved a criminal defendant challenging the imposition of a sentencing enhancement known as the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which applies when a defendant has three prior convictions for a “violent felony.”[7] The issue in Taylor was whether two second-degree burglary convictions under Missouri law could be considered violent felonies for the purpose of applying the enhancement. The Taylor Court concluded that only the conviction itself and the statutory definition of the particular offense, and not a description of the defendant’s conduct, could be considered in determining whether an offense qualified as a violent felony under the ACCA.[8]
Taylor’s categorical approach rested on three rationales. First, the language defining “violent felony” in 18 U.S.C. § 924(e)(2)(B) supports the notion that sentencing courts are to look at the offense of conviction itself and not at particular facts of an underlying conviction.[9] Second, the legislative history of the ACCA suggests that Congress intended that sentencing courts use a categorical approach.[10] Third, a fact-based approach would produce “practical difficulties and potential *142 unfairness.”[11] Violent felony convictions that are counted for an ACCA enhancement are often adjudicated by different courts in proceedings that occurred long before the defendant’s sentencing. In Taylor, the two convictions at issue had been adjudicated in Missouri state court's; the most recent of these convictions had occurred 17 years prior to the proposed application of the ACCA.[12] The Taylor Court recognized the challenges in determining the precise facts underlying a defendant’s conviction when those facts are not plain from the elements of the offense itself. Determining facts of the earlier conviction could require a sentencing court to engage in evidentiary inquiries based on what occurred at a trial in the distant past.
Since the Court’s decision in Taylor, developments in the law have provided an additional reason for avoiding factual inquiries. The Supreme Court has held that a criminal defendant’s Sixth Amendment rights are violated when a fact that increases the maximum penalty for a crime is not submitted to a jury.[13] As the Court recognized in Shepard, v. United States, this principle would extend to determination of facts that render a particular crime a “violent felony” and. therefore support application of the ACCA.[14]
The analysis in Taylor was born from the Court’s interpretation of the ACCA’s definition of a “violent felony” in 18 U.S.C. § 924(e)(2)(B), which provides in relevant part that a violent felony:
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another.,..[15]
Although Taylor focused on whether a Missouri burglary conviction would qualify as a “burglary” under the second clause of this definition—the “enumerated offenses” clause—the Court’s justification of the categorical approach relied on the complete definition in § 924(e)(2)(B).[16] Consequently, the categorical approach has been applied ' both to' the other clauses in the ACCA’s “violent felony” definition as well as to definitions of similar terms that mirror much of the ACCA’s language.[17]
Despite the unequivocal language animating the decisions applying the categóri *143 cal approach, the Taylor Court recognized that a “narrow range of cases” would require a sentencing court to look beyond the elements of an offense to “the charging paper and jury instructions” in order to determine whether a particular offense could qualify as a violent felony under the ACCA.[18] This “modified categorical approach” applies when the statute defining the offense in question is “divisible”—that is, when one or more of the elements of the offense has an alternative.[19] The modified categorical approach is not meant to supplant the categorical approach. Rather, it “merely helps implement the categorical approach” when a defendant has been convicted of violating a statute that may only qualify as a predicate offense in particular applications of the statute.[20] In order to determine what application of a statute is involved in a particular case, we can look at, among other documents, the charging documents.[21]
In the case before us of contemporaneous offenses of Hobbs Act robbery and of brandishing a handgun, the modified cate-. gorical approach is inherent in the district court’s consideration of the case because the relevant indictment and jury instructions are before the court.
For this reason, the approach we adopt here recognizes the differences between § 924(c) and other statutes that require categorical analysis, while at the same time being guided by the rationales put forth in Taylor and the limits set by our Constitution. Because the determination of whether a particular crime qualifies as a “crime of violence” under § 924(c) depends upon both the predicate offense, here Hobbs Act robbery, and the contemporaneous conviction under § 924(c), the § 924(c) conviction will shed light on the means by which the predicate offense was committed. Looking at a contemporaneous conviction allows a court to determine the basis for a defendant’s predicate conviction. The defendant suffers no prejudice because the court is not. finding any new facts which'are not of record in the case before it.
We conclude that analyzing a § 924(c) predicate offense in a vacuum is unwarranted when the convictions of contemporaneous offenses, read together, necessarily support the determination that the predicate offense was committed with the “usé, attempted use, or threatened use of physical force against the person or property of another.”[22] In so doing, we do not direct courts to speculate as to facts. The only facts that may support the conclusion that a particular crime is a “crime of violence” are those that have either been found by the jury or admitted by the defendant in a plea.
Robinson argues, however, that we should look at the statutory definition of Hobbs Act robbery and determine whether it “has as an element” the actual, threatened, or attempted use of force against person or property.[23] Hobbs Act robbery is defined as
the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or *144 future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.[24]
The definition of Hobbs Act robbery borrows conceptually, if not linguistically, from § 924(c)(3)(A)’s definition of “crime of violence.” Both definitions refer to the use or threatened use of force against person or property, and the robbery definition goes so far as to include the term “violence.” This language would seem adequate in and of itself to satisfy the “elements” clause of § 924(c)(2)(B).
Robinson contends, nevertheless, that under the categorical approach, we should look only to the minimum conduct criminalized by the statute in determining whether it is a crime of violence.[25] Thus, Robinson described a number of scenarios in which someone could commit a Hobbs Act robbery without using or threatening to use force. Robinson focuses on the phrase “fear of injury” to envisage a scenario where, for example, a threat is made to an intangible economic interest without any use of force. Among Robinson’s examples are threats of “throwing paint on someone’s house, pouring chocolate syrup on someone’s passport, or spray painting someone’s car.”
While this display leaves no doubts in our minds that Robinson’s counsel is creative, it is not necessary to our analysis. In addition to being convicted of Hobbs Act robbery, Robinson was convicted of brandishing a firearm while committing Hobbs Act robbery. The question, therefore, is not “is Hobbs Act robbery a crime of violence?” but rather “is Hobbs Act robbery committed while brandishing a firearm a crime of violence?” The answer to this question must be yes.
A firearm is “brandished” when all or part of the. firearm is displayed or made known to another person in order to intimidate that person.[26] Thus, from the two convictions combined, we know that in committing robbery Robinson (1) used or threatened force, violence, or injury to person or property, and (2) used a firearm in order to intimidate a person.
This approach may not always be appropriate. The definition of “crime of violence” still directs courts to look at the elements of an offense. As such, the value in examining contemporaneous convictions is in elucidating what may be an otherwise ambiguous element in the statute. It is possible that Robinson’s far-fetched scenarios could provide a basis for conviction under 18 U.S.C. § 1951(a), but the combined convictions before us make clear that the “actual or threatened force, or violence, or fear of .injury” in Robinson’s Hobbs Act robbery sprang from the barrel of a gun. Accordingly, we will affirm Robinson’s conviction under 18 U.S.C. § 924(c).
IV.
We now turn to Robinson’s challenges to the District Court’s denial of his suppression motion, the failure to conduct a Faretta[27] hearing, and his classification as a “career offender” for sentencing purposes. We hold that the District Court did not err in denying Robinson’s motion to suppress or in failing to conduct a Faretta hearing. However, we will remand Robinson’s case for further sentencing proceedings.
*145 A.
We review a ruling on the admission of identification testimony for abuse of discretion.[28] An eyewitness identification that arises from an identification procedure that is unnecessarily suggestive and carries a substantial risk of misidentification may be suppressed under the Due Process clause of the Fifth Amendment.[29] A defendant seeking to suppress identification testimony has the burden of proving that the identification procedure used was unnecessarily suggestive.[30] “The suggestiveness of a photographic array depends on several factors, including the size of the array, its manner, of presentation, and its contents. If there is no prejudice in the manner of presentation, the primary question is whether the suspect’s picture is so different from the rest that it suggests culpability.”[31] We review a finding that a photo array was not unnecessarily suggestive for clear error.[32]
Robinson argued before the District Court that the photo array used to identify him was unduly suggestive because Robinson’s photo was “noticeably lighter than the others” and Robinson was “the only individual wearing a shirt with a collar.” The District Court concluded that these differences were “slight” and were not unduly suggestive. The difference in lighting was found to be “within the range of variation of all the photographs, some of which are darker than the others,” while the presence of a collar did not stand out among the “variation in necklines of the shirts” in the array’s other photographs. We see no indication that the District Court clearly erred in reaching this conclusion.
Robinson raises for the first time on appeal the additional arguments that the array was unduly suggestive because of its size, because most of the other individuals have darker complexions than Robinson, and because his photograph was one of only two that has gray facial hair. However, a suppression argument raised for the first time on appeal is waived absent good cause.[33] Robinson .has not demonstrated good cause for his failure to raise these arguments, so we will not consider them.
Because the District Court did not clearly err and because Robinson’s additional arguments have been waived, we will affirm the District Court’s dismissal of Robinson’s suppression motion.
B.
We next turn to Robinson’s allegation that the District Court erred in failing to conduct a Faretta inquiry following Robinson’s requests to proceed pro se. We exercise plenary review of a claim that a District Court’s ruling violated a defendant’s right of self-representation.[34]
The Sixth Amendment affords all criminal defendants the right “to have the Assistance of Counsel” for their defense.[35] This right “carries as its corollary *146 the right to proceed pro se.”[36] The Supreme Court addressed the contours of a defendant’s right to self-representation in Faretta v. California, where the Court emphasized that “[t]he language and spirit of the Sixth Amendment contemplate that counsel, like other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his' right to defend himself personally.”[37] However, because a defendant who chooses to represent himself relinquishes a number of benefits that come with the assistance of counsel, any defendant seeking to proceed pro se must “knowingly and intelligently” relinquish the assistance of counsel.[38] Courts have the responsibility to engage in a “Faretta inquiry” to determine that a defendant’s request to proceed pro se has been made knowingly and intelligently. In United States v. Peppers, we set forth three requirements that must be satisfied before a defendant may represent himself:
1. The defendant must assert his desire to proceed pro se clearly and unequivocally.
2. The court must inquire thoroughly to satisfy itself that the defendant understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved.
3. The court must assure itself that the defendant is competent to stand trial.[39]
Robinson requested to proceed pro se on two occasions. On the first occasion, when the, request was made in a written motion, the District Court held a hearing to ascertain Robinson’s understanding of the law surrounding his charges. In the midst of this hearing, Robinson informed the court, that he had decided to retain counsel. While Robinson suggests that the District Court’s hearing was “coercive” and caused him to “acquiesce” to retaining representation, the record shows that the- District Court in informing Robinson of the risks of self-representation, noted that his lawyer was an experienced defense lawyer well-versed in the issues that Robinson sought to raise. This is not coercive. It is exactly what a court is required to do when adjudicating a request to proceed without counsel.[40]
Robinson’s second request came following a hearing on Robinson’s motion to suppress. As the hearing concluded, Robinson announced that he had a motion to file, which his counsel confirmed was a notice that Robinson wished to proceed pro se. Rather than addressing Robinson’s desire to proceed pro se, the Court requested that counsel file any relevant motion. Although Robinson’s counsel informed the court that she would file the motion, no motion was filed. When Robinson’s trial began, Robinson’s counsel advised the court that there were no outstanding issues. Given these facts, we cannot say that Robinson expressed his desire to proceed pro se “clearly and un *147 equivocally,” as required by Peppers: no motion was filed and the issue was not raised again after its brief mention at the end of Robinson’s .suppression hearing. Without a clear and unequivocal request to proceed pro se, a Faretta inquiry is not necessary.[41] Thus, we hold that Robinson’s right to self-representation was not abridged by the District Court’s failure to conduct a second Faretta inquiry.
C.
The final issue in this appeal is Robinson’s challenge to his classification as a “career offender?’ under the Sentencing Guidelines. Because Robinson did not object to his classification at sentencing, there is an inadequate record to review this claim. The government has conceded, however, that the issue of whether Robinson qualifies as a career offender should, in the interests of justice, be remanded to the District Court to determine whether the career offender provision under U.S.S.G. § 4B1.1 applies. We agree.
Accordingly, we will remand the case for further sentencing proceedings.
y.
For the reasons stated above, we will affirm Robinson’s convictions under § 924(c) and § 1951(a). However, we will remand the case for further sentencing proceedings so that the District Court may determine if Robinson’s prior convictions were crimes of violence under the career offender guideline.

. 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. United States v. Saada, 212 F.3d 210, 223 (3d Cir. 2000).

. 18 U.S.C. § 924(c)(3)(A)-(B).

. - U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).

. Appellant argues that our recent decision in Baptiste v. Attorney Gen., 841 F.3d 601, 611 (3d Cir. 2016) forecloses our application of 18 U.S.C. § 924(c)'s residual clause. Although we do not rely on the residual clause to resolve this case, we note that Baptiste is not necessarily applicable here. In Baptiste, the Court considered whether the defendant’s pri- or state conviction constituted a predicate violent offense. Our inquiry here, however, asks whether a federal offense that was contemporaneously tried with § 924(c) possession may properly serve as a predicate offense. Resolution here is distinguishable because it does not require consideration of a prior state conviction.

. 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).

. Id. at 578, 110 S.Ct. 2143.

. Id. at 602, 110 S.Ct. 2143.

. Id. at 600-01, 110 S.Ct. 2143.

. Id. at 601, 110 S.Ct. 2143.

. Id. at 601-02, 110 S.Ct 2143.

. Id. at 578, 110 S.Ct 2143.

. Jones v. United States, 526 U.S. 227, 243 n.6, 119 S.Ct 1215, 143 L,Ed.2d 311 (1999); Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L,Ed.2d 435 (2000).

. 544 U.S. 13, 24, 125 S.Ct 1254, 161 L.Ed.2d 205 (2005) (citing Jones, 526 U.S. at 243 n.6, 119 S.Ct. 1215, and Apprendi, 530 U.S. at 490, 120 S.Ct, 2348).

. 18 U.S.C. § 924(e)(2)(B).

. Taylor, 495 U.S. at 600-02, 110 S.Ct 2143.

. See, e.g., Johnson v. United States, 559 U.S. 133, 136-38, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (applying a categorical approach under 18 U.S.C. § 924(e)(2)(B)(i)); Moncrieffe v. Holder, — U.S. —, 133 S.Ct. 1678, 1684, 185 L.Ed.2d 727 (describing the application of the categorical approach to determine whether a particular crime is an “aggravated felony" under the Immigration and Nationality Act); Leocal v. Ashcroft, 543-U.S. 1, 9-11, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (applying the categorical approach under 18 U.S.C. § 16, defining a “crime of violence”). But see Nijhawan v. Holder, 557 U.S. 29, 36, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009) (statutory provision defining aggravated felony as an offense that “involves fraud or deceit in which the loss to the victim or victims exceeds $10,000” called for factual inquiry regarding amount of loss),

. Taylor, 495 U.S. at 602, 110 S.Ct. 2143.

. See Descamps v. United States, — U.S. —, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013).

. Id. at 2285.

. Shepard v. U.S., 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

. 18 U.S.C. § 924(c)(3)(A).

. Id.

. 18 U.S.C. § 1951(b)(1) (emphasis added).

. See Moncrieffe, 133 S.Ct. at 1684.

. 18 U.S.C. § 924(c)(4).

. Faretta, 422 U.S. 806, 95 S.Ct. 2525

. United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006).

. Brownlee, 454 F.3d at 137.

. United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003).

. Reese v. Fulcomer, 946 F.2d 247, 260 (3d Cir. 1991).

. United States v. Burnett, 773 F.3d 122, 130 (3d Cir. 2014).

. United States v. Rose, 538 F.3d 175, 182 (3d Cir. 2008)

. United States v. Peppers, 302 F.3d 120, 127 (3d Cir. 2002).

. U.S. Const. Amend. VI.

. Peppers, 302 F.3d at 129.

. 422 U.S. 806, 820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. Id. at 835, 95 S.Ct. 2525; see Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (holding that a waiver of constitutional rights must be knowing and intelligent).

. Peppers, 302 F.3d at 132 (internal quotations and citations omitted).

. See id. at 133 (noting that a proper Faretta inquiry requires “specific forewarning of the risks that foregoing counsel’s trained representation entails.”).

. Id. at 132.