NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1360
_____

UNITED STATES OF AMERICA

v.

BLAIR THOMAS, JR.,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal Action No. 2-14-cr-00096)
District Judge: Honorable Gerald A. McHugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 13, 2017
_____

Before: GREENAWAY, JR. and SHWARTZ, *Circuit Judges*, and
SIMANDLE,* *Chief District Judge*.

(Filed: July 18, 2017)
_____

OPINION**
_____

---

* The Honorable Jerome B. Simandle, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation. Judge Simandle assumed senior status on June 1, 2017.

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

After a four-day federal jury trial, Blair Thomas, Jr. was convicted of multiple robbery and firearm counts. On appeal he argues that the District Court erred in denying both his motion for a mistrial and his motion to suppress physical evidence. He also argues that his convictions for using and carrying a firearm during a crime of violence are invalid. For the reasons that follow, we will affirm the District Court's judgment of conviction.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.      Factual Background

#### 1.      Attempted Robbery of the Yeadon Post Office

On the morning of January 22, 2014, a man entered the post office in Yeadon, Pennsylvania. The post office was empty, save for a postal clerk at the counter. When the man walked up to the counter, the postal clerk noticed a waxy, tan substance covering the man's face, along with a mustache, a pair of glasses, and a hat.

The man then demanded ten $1,000 money orders, and presented the clerk with a note saying that he had a gun. The clerk bolted out of the post office, not knowing "if there was a gun or not." SA 8. The man left, empty-handed. Surveillance cameras captured images of the man.

2

## 2. Attempted Robbery of the Darby Post Office

Later that same morning, a man entered the post office in Darby, Pennsylvania, a town neighboring Yeadon. This man also wore a tan mask, in addition to a grey hooded sweatshirt and grey sweatpants.

He approached the counter and demanded $10,000 in money orders. When the clerk asked for identification, the man lifted up his shirt, pulled out a gun, and pointed it at the clerk. The clerk was "petrified." SA 25. But a customer and a postal carrier soon entered the lobby and the man fled.

## 3. Robbery of the Wells Fargo Bank

The next morning, a man in a tan mask, a pair of sunglasses, and a hat entered a Wells Fargo Bank in Springfield, Pennsylvania, a town in the same county as Yeadon and Darby.

He handed a note to the greeter at the door, announcing that this was a robbery. The man then demanded that the tellers put money in his duffel bag and escort him to the bank vault. The tellers stuffed some bills in the duffel bag but refused to take him to the bank vault. Security cameras captured the robbery.

## 4. The Investigation

Sean McStravick, the postal inspector assigned to investigate the robberies, rolled the three crimes into one investigation. Based on an anonymous tip, McStravick contacted Jeremy Oneail, owner of an online mask making company. Oneail recognized the mask on both the Yeadon Post Office robber and the bank robber as the "Raj" mask.

His transaction records showed that on December 29, 2013, he sold one of his masks—a Raj mask—to "Blair Thomas, 136 Hirst Ave., Landsowne, Pennsylvania." SA 296–297. McStravick used this information to obtain a federal search warrant.

About a week after the attempted robbery of the Yeadon Post Office, postal inspectors executed a warrant at the 136 Hirst Avenue residence.[1] A black BMW approached the residence at the same time as the inspectors. One of the inspectors, Rick Link, approached the BMW and yelled "Police, let me see your hands." SA 253. The driver did not comply. Link then saw the driver's arm move down toward the gearshift. He feared that the driver would run him over.[2] The car moved, according to Link, about three to five feet before it stopped. Another postal inspector then pulled the driver from his seat. The driver was Blair Thomas, Jr.

The postal inspectors arrested Thomas and removed the following items from the house: (1) a United States Postal Service box containing a mask from Oneail's company; (2) a .45 caliber Ruger semi-automatic pistol with two magazines, one inside the weapon with seven rounds; (3) a black knit hat; (4) grey sweatpants; and (5) $3,000 in cash. The postal inspectors also removed a grey hooded sweatshirt, a pair of grey sweatpants, three pairs of sunglasses, and a notebook from the black BMW, pursuant to a warrant. The

---

[1] The postal inspectors later verified that this was the residence of Thomas's mother. This was also the address listed on Thomas's driver's license.

[2] The defense objected during this portion of Link's testimony but the District Court held that Link could testify to what he feared.

4

imprinted handwriting on the cover of the notebook read "This is a robbery. I have a gun. Stay calm and print ten money orders, $1,000." SA 278.

Meanwhile, Thomas waived his right to remain silent at the police station and agreed to speak with the postal inspectors. He wrote a confession, admitting to the following: he committed the two attempted robberies at the post offices and the robbery at the bank; he bought the Raj mask online using PayPal; he used the mask and the gun located at the 136 Hirst Avenue residence in the robberies; and he used the mask in all of the robberies, but only used the gun at the post offices.

### B.    Procedural History

A grand jury returned a six-count indictment charging Thomas with two counts of attempted robbery of a postal employee, in violation of 18 U.S.C. § 2114(a); two counts of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1); one count of bank robbery, in violation of 18 U.S.C. § 2113(a); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

The District Court on the eve of trial denied Thomas's motion to suppress both the evidence seized from the 136 Hirst Avenue residence and the black BMW as well as the written, signed confession.

At trial, the jury heard testimony from, among others, the postal clerks and bank employees whom Thomas had threatened, Oneail, McStravick, Link, a third postal

inspector involved in the investigation, and a forensics expert. McStravick also read Thomas's written confession into the record.

Before closing arguments, the government requested a jury instruction regarding consciousness of guilt, based on the testimony that Thomas initially disregarded Link's command and that the black BMW rolled toward Link. The District Court denied the request, and the prosecutor made no mention of the BMW rolling toward Link in her closing argument.

But the defense counsel did dwell on the testimony that the BMW rolled forward, albeit couching the significance of the testimony by saying it did not "really make a difference in the overall case itself." App. 305. She went on to challenge Link's and McStravick's accounts of the BMW rolling forward by saying "[t]hat's not what happened. That's not what happened. But why try to infuse that into this case. We know it didn't happen. You know why it didn't happen . . . ." App. 306. And she explained why the testimony was "just irresponsible":

> You can't do that in a case like this. Why? Why? Why when the government says they've got a mountain of evidence over here do they have to then infer that that young man was just trying to hurt a police officer? That's just—it's just not right.

App. 307.

In rebuttal, the prosecutor responded to the defense counsel's characterization of the incident:

> And with regard to the testimony from . . . Inspector Link and Inspector McStravick about the car, there has been no evidence to suggest anything different

6

other than their testimony.  So I ask you, ladies and gentlemen, to use your common sense like you would every day and evaluate their testimony because *the defense has not presented any evidence and you haven't seen any evidence that shows anything different about what happened*.  [Defense counsel] said we know that's not what happened.  *Well, how do we know that without evidence*?

App. 310 (emphasis added).[3]

This prompted the defense counsel to request a meeting at sidebar**.**  The trial judge told the prosecutor that he was "going to instruct the jury to disregard that" and that he will "reserve judgment on this later."  App. 310.  The prosecutor then attempted to explain to the jury what she meant:

Ladies and gentlemen, my comments about the defense presenting evidence, if I could, I just want to finish that the argument that that didn't happen, [defense counsel's] argument that we all know that that's not happened, *my comments were meant that that was argument and that you all did not hear evidence suggesting that that's not what happened*.

App. 311 (emphasis added).

The Court then addressed the jury briefly:

[A]ny suggestion that the defense needs to put on evidence should be completely disregarded by you during your deliberations.  I want to make that clear.  The defense has zero, and I repeat zero, obligation to present any evidence on any issue before this jury.

*Id.*  Following this instruction, the prosecutor attempted to further clarify what she meant: "Once again, my comments were meant so that that was argument and not evidence.  *So, again, there was no evidence to show anything other than what the agents told you about what happened with the car*."  App. 311–312 (emphasis added).  The prosecutor then returned to her rebuttal presentation.

---

[3] The defense did not present any evidence.

Before the jury began deliberation, the trial judge reiterated the burden of proof:

I want to emphasize one more time the defense has zero obligation to present any evidence with respect to any element or any accusation in this case or in any case. The burden is always, and I repeat, always with the government to prove to your satisfaction with proof beyond a reasonable doubt every element of every offense.

App. 321.

The defense then orally moved for a mistrial, arguing that the government impermissibly shifted the burden of proof and that the judge's limiting instruction was insufficient. The judge took the matter under advisement. The jury returned a verdict later that day: guilty on all counts. The jury also concluded that Thomas brandished a firearm during the attempted robbery of the Darby Post Office.

The defense filed a mistrial motion about a week later. The Court denied it, finding that although the prosecutor's comments were improper, the error was harmless. Thomas's timely appeal followed.

## II.     JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). "We review a district court's decision not to grant a mistrial on the grounds that the prosecutor made improper remarks in closing argument for abuse of discretion, and, if error is found, we apply harmless error analysis." *United States v. Molina-Guevara*, 96 F.3d 698, 703 (3d Cir. 1996) (internal citations omitted). We review the District Court's determination that an offense is not a crime of violence, as required for conviction under § 924(c), for plain

8

error because Thomas did not raise any objections below. *See United States v. Robinson*, 844 F.3d 137, 140 (3d Cir. 2016). And we review the District Court's determination on a motion to suppress evidence "for clear error as to the underlying factual findings" and we "exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

## III.  ANALYSIS

On appeal, Thomas provides three reasons why we should vacate his conviction and sentence and remand to the District Court for a new trial. First, he claims that the District Court erred when it denied his motion for mistrial based on the prosecutor's remarks in her rebuttal argument. Second, he argues that his convictions pursuant to 18 U.S.C. § 924(c) should be overturned because the predicate offense for each conviction, attempted postal robbery, as defined by 18 U.S.C. § 2114(a), does not qualify as a "crime of violence." Finally, Thomas contends that the District Court erred when it denied his motion to suppress the physical evidence that the postal inspectors seized during the search of his mother's home.

### A.  The District Court Did Not Abuse Its Discretion When It Denied the Motion for a Mistrial

Thomas argues that the prosecutor improperly shifted the burden of proof when rebutting defense counsel's argument. This burden shift, according to Thomas, unfairly prejudiced him because "his defense depended on the jury's proper understanding of the burden of proof." Appellant's Br. at 18. As a result, the District Court should have

9

granted a mistrial, according to Thomas, because the jury may not have deliberated sufficiently, "especially on Count II" (using a firearm in the commission of the Yeadon Post Office attempted robbery). Appellant's Br. at 18. We disagree. The District Court did not abuse its discretion in denying Thomas's motion for a mistrial.

To determine whether the District Court erred by failing to grant a mistrial, we look to "the scope of the improper comments in the overall trial context, the effect of any curative instructions given, and the strength of the evidence against the defendant." *United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir. 1999).

As a threshold matter, it is debatable whether these remarks even constituted impermissible burden shifting. In context, it appears that the prosecutor attempted to undercut the defense counsel's argument—that McStravick and Link mischaracterized the details of Thomas's arrest—by pointing out that there was no evidence to support this argument. But even if these remarks constituted impermissible burden shifting, we conclude that Thomas fails to establish the three *Mastrangelo* factors.

First, the remarks pertained to a collateral issue—what McStravick and Link perceived when they arrested Thomas. This testimony is collateral because whether it happened does not establish or disprove an element of Thomas's charged offenses. The testimony's absence from the government's closing argument, and the defense counsel's disclaimer that this testimony "doesn't really make a difference in the overall case itself" further show that this testimony is collateral. Thus, the first *Mastrangelo* factor— "the

10

scope of the improper comments in the overall trial context"—cuts in favor of the government. *Id.* at 297.

Next, we conclude that the District Court's immediate curative instruction was sufficient. "[W]e presume that the jury will follow a curative instruction unless there is an 'overwhelming probability,' that the jury will be unable to follow it and a strong likelihood that the effect of the [statement] would be 'devastating,' to the defendant." *United States v. Newby*, 11 F.3d 1143, 1147 (3d Cir. 1993) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)). No such overwhelming probability exists here, thus, we conclude that the second *Mastrangelo* factor—"the effect of any curative instructions given"—cuts in favor of the government. *Mastrangelo*, 172 F.3d at 297.

Finally, we conclude that the third *Mastrangelo* factor—"the strength of the evidence against the defendant"—cuts in favor of the government. *Id*. We agree with the District Court that "the evidence suggestive of [Thomas's] guilt in this case was overwhelming"—extensive witness testimony, physical evidence, and a written confession. App. 21 n.1. The prosecutor's remarks in her rebuttal did not prejudice Thomas.

After considering the context of the prosecutor's remarks, the District Court's curative instruction, and the overall strength of the evidence against Thomas, we hold that the District Court acted within its discretion when it rejected Thomas's mistrial motion.

**B.     Attempted Robbery of a Postal Employee is a Crime of Violence When Contemporaneously Tried With § 924(c)**

Thomas argues that the convictions pursuant to 18 U.S.C. § 924(c) are invalid because the predicate offense for both convictions—attempted postal robbery, as defined by 18 U.S.C. § 2114(a)—is not a crime of violence.  We review this ruling for plain error, and we find no such error here.

Thomas was indicted and convicted pursuant to 18 U.S.C. § 924(c), which provides that "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," violates § 924(c).  Section 924(c) goes on to define a "crime of violence" as a felony that: "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another"; or "(B) . . . by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(A)-(B).

Generally, when courts determine whether a crime is a crime of violence, they compare the elements of the predicate offense to the definition of "crime of violence," in what is referred to as the categorical approach.  *See Taylor v. United States*, 495 U.S. 575 (1990).  But the categorical approach is not necessary in cases where the "predicate offense . . . and the § 924(c) offense are contemporaneous and tried to the same jury."  *Robinson*, 844 F.3d at 141.

This is so because "[t]he jury's determination of the facts of the charged offenses unmistakably shed light on whether the predicate offense was committed with 'the use, attempted use, or threatened use of physical force against the person or property of another.'" *Id.* Thus, "analyzing a § 924(c) predicate offense in a vacuum is unwarranted" and "[t]he remedial effect of the 'categorical' approach is not necessary." *Id.* at 141, 143.

Here, the charging document establishes that Thomas's predicate offenses—attempted robbery of a postal employee—and the § 924(c) offenses—using and carrying a firearm—occurred contemporaneously. And the District Court instructed the jury that the crime of robbery of a postal employee required that the defendant "put the life of a postal employee . . . in jeopardy by use of a dangerous weapon." SA 399. There is no need to opine on whether Thomas's hypotheticals could provide a basis for conviction under § 2114(a) because the jury had an adequate factual basis to conclude that § 2114(a), committed while using and carrying a firearm, is a crime of violence. Accordingly, we will affirm Thomas's § 924(c) convictions.

### C. Law Enforcement Lawfully Obtained Thomas's Personal Information from Oneail

Thomas contends that the postal inspectors relied on a defective search warrant to search his mother's residence because it was premised on illegally-obtained evidence seized from a third party. We disagree.

13

At the outset, it bears mentioning that Thomas *agrees* that the current precedent "requires that the individual challenging the search have a reasonable expectation of privacy in the property searched . . . and that he manifest a subjective expectation of privacy in the property searched[.]" *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) (alteration in original) (citation omitted); Appellant's Br. at 53. The Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979).

Applying the third party doctrine in this case is straightforward. Thomas provided a third party—Oneail—with his name, address, and certain financial information when he purchased the Raj mask. In so doing, Thomas abandoned his privacy interest in this information because he "assumed the risk that the information would be divulged to police." *Id.* at 745.

Nonetheless, Thomas argues that the third party doctrine "should be overruled given the heightened concerns for privacy in the digital age and in light of Justice Sotomayor's concurring opinion in *United States v. Jones*, 565 U.S. 400 (2012)." Appellant's Br. at 53. At present, we are bound by the third party doctrine articulated in *Smith* and therefore affirm.

IV.   **CONCLUSION**

For the reasons set forth above, we will affirm the District Court.