NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-4009
_____

UNITED STATES OF AMERICA

v.

BRANDON KENNEDY,
                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-13-cr-00240-001)
District Judge: Honorable Nora B. Fischer
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 4, 2017

Before: CHAGARES, SCIRICA, and FISHER, Circuit Judges

(Filed: December 18, 2017)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

### I.

Brandon Kennedy appeals his conviction and sentence in connection with the robbery of an AT&T store outside Pittsburgh, Pennsylvania. Kennedy was convicted of interference with commerce by robbery, 18 U.S.C. § 1951(a), being a felon in possession of a firearm, 18 U.S.C. 922(g)(1), and brandishing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), in the Western District of Pennsylvania. He was sentenced to 155 months in prison, including a mandatory sentence of 84 months for brandishing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c). Kennedy raises constitutional challenges to his conviction and sentencing, and appeals the denial of his motion to suppress evidence. We will affirm.

### II.[1]

### A.

On November 26, 2012, a man wearing a gray sweat suit, a mask, and gloves, entered the AT&T store in Green Tree, Pennsylvania, a suburb of Pittsburgh, and pointed a handgun at the employees. Ordering them into the inventory room, the robber demanded the employees fill two blue nylon bags with cash and Apple products. The man left the store with $67.41 in cash and thirty electronic devices. The robbery was captured on AT&T's video surveillance system.

Earlier that day, Brandon Kennedy had borrowed his then-partner's rental car to drive from Michigan to the Pittsburgh area. Because Kennedy did not have a valid

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

driver's license, his friend, Ms. Lang drove the car and Kennedy was the passenger.[2] Lang testified she drove Kennedy to the Pittsburgh area, parked at a building adjacent to the Green Tree AT&T store, and waited in the car for Kennedy to return. After three hours she received a phone call from Kennedy telling her to open the trunk. According to her testimony, Kennedy then returned to the vehicle wearing a gray "sweat outfit," AA 576, threw bags into the trunk, got in the backseat, and instructed her to drive.

Later that evening in South Rockwood, Michigan, Officer Salamas initiated a traffic stop of Lang and Kennedy's rental car for traveling 81 miles per hour in a 70 mile per hour zone. Officer Salamas approached the car and first spoke with Ms. Lang. He testified that he noticed signs of marijuana use—including glassy, bloodshot eyes and the smell of burnt marijuana. Ms. Lang admitted to having smoked marijuana earlier in the day. Officer Salamas removed her from the car and administered a field sobriety test. Ms. Lang failed the sobriety test and was arrested and placed in the back of Officer Salamas's police car. During this process a border patrol agent arrived to assist Officer Salamas with the traffic stop but did not have any direct contact with Kennedy or Ms. Lang.

Officer Salamas then returned to the vehicle and ran a warrant check on Kennedy, finding three outstanding warrants. He arrested Kennedy, placed him in the border patrol officer's car, and proceeded to search the vehicle for evidence of controlled substances. He found none. A second border patrol agent arrived with a "drug dog." The dog made a couple of passes around the vehicle, but no contraband was found.

---

[2] Kennedy's then-partner, Ms. Taylor, rented the car for herself but had given Kennedy permission to use her Hertz rental car as long as he had a licensed driver to operate the car. And although he was not referenced officially on the rental agreement, Ms. Taylor testified Kennedy reimbursed her for some of the costs associated with the rental.

Officer Salamas then called for a tow truck to remove the car from the interstate. In preparation for the car's impoundment, he conducted an inventory search of the vehicle.[3] He found two blue nylon bags containing 12 Apple iPads, 14 Apple iPhones, 1 Samsung phone, and a piggy bank in the trunk of the car. When asked about the items, Kennedy stated he had purchased them from a friend for $1200. According to Officer Salamas, the entirety of Lang and Kennedy's arrests was captured by a dashboard camera installed in his police car, which activates whenever the vehicle's emergency lights are in use.

Upon completion of the inventory, the car was towed back to the Hertz agency in Dearborn, Michigan. Two days after the car was returned to Hertz, an employee noticed the seat was improperly aligned, lifted the seat and discovered a firearm. He immediately called the police. Officer Salamas was sent to recover the firearm. The Hertz employee testified that while they were waiting for the police to arrive, Ms. Taylor and a man he later identified as Kennedy based on a photograph provided to him by the Bureau of Alcohol, Tobacco, and Firearms, came into the store and were "adamant" about wanting to remove items from the vehicle. They were told that a police investigation was in process and denied access to the vehicle.

When Officer Salamas arrived, he photographed the firearm in the vehicle, and wore gloves while handling it, but did not request further tests (fingerprint, DNA). The weapon was initially retained by the South Rockwood police department and logged in as

---

[3] Officer Salamas testified that the inventory was conducted in accordance with department policy at the time.

evidence, but upon discovery it had been stolen, it was turned over to the police in the jurisdiction where the theft had occurred.

Three months later, the items found during the traffic stop were identified as the items stolen in the Green Tree robbery. A grand jury returned a three-count indictment charging Kennedy with interference with commerce by robbery ("Hobbs Act robbery"), being a felon in possession of a firearm, and brandishing a firearm in furtherance of a crime of violence.

B.

Prior to trial, Kennedy filed several motions relevant to this appeal. Kennedy filed a motion to suppress the evidence seized in the traffic stop. He argued that although not the renter of the vehicle, he had a reasonable expectation of privacy, and therefore the police search of the rental car violated his Fourth Amendment rights. After a hearing, the District Court denied the motion to suppress.

Kennedy also made numerous attempts, including making an oral motion on the record, to obtain video footage from the night of his arrest. All South Rockwood police cars are equipped with dashboard cameras that activate and record whenever the vehicle's emergency lights are in use. When standard procedure is followed, video captured by the dashboard camera is saved to a hard drive in the car, which the officer then takes to his supervisor to download and save onto a computer at the police station. Accordingly, the South Rockwood police department should have had dashcam footage of the traffic stop and Kennedy's subsequent arrest. But in response to Kennedy's motion, the government filed a written response stating that no such footage existed.

5

The case proceeded to trial where the government called several witnesses including Officer Salamas, his supervisor, and Ms. Lang. Officer Salamas testified about details related to the traffic stop and Kennedy's subsequent arrest, including the fact that Kennedy was wearing a gray sweat suit at the time of arrest. He also testified the dashcam in his vehicle recorded these events and that he turned the cartridge containing the video in to his supervisor according to department protocol. Officer Salamas's supervisor testified that he personally transferred the footage from Officer Salamas's dashcam system to the police station's computer, and that months later, upon realizing the data had been lost, he and the police chief attempted to recover the data by consulting the manual and technical support. Ms. Lang testified about the events on the day of the robbery, including claiming Kennedy committed the robbery of the AT&T store.

The defense contested Officer Salamas's and Ms. Lang's accounts. The defense also challenged the nature government's investigation process—particularly the government's failure to fingerprint and DNA-test the firearm allegedly used in the robbery. *See* Appellant Br. at 46. During the trial and in closing argument, the government countered these claims by suggesting the defense could have itself conducted such testing. Kennedy did not object to these remarks when they were made.

A jury convicted Kennedy of all three charges. The District Court imposed a sentence of 155 months in prison, which included a mandatory sentence of 84 months for brandishing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c).

6

## III.

Kennedy raises four issues on appeal: (1) whether the loss or destruction of the dashcam video of his arrest violated his due process rights; (2) whether statements the prosecution made at trial unconstitutionally shifted the burden of proof from the government to the defense; (3) whether his conviction and sentence for brandishing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c) are still valid in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015); and (4) whether the search of the rental car violated his Fourth Amendment rights.

### A. Dashcam and Due Process

To establish a due process violation on the basis of a failure to preserve potentially exculpatory evidence, a defendant must show: (1) the potentially exculpatory nature of the evidence was apparent at the time of destruction or loss, *California v. Trombetta*, 467 U.S. 479, 489 (1984); (2) there is a lack of "comparable evidence by other reasonably available means," *id.*; and, (3) the government acted in "bad faith," *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Kennedy argues the loss of the dashcam footage of the traffic stop violated his due process rights. Kennedy maintains "the video contained potentially exculpatory evidence" and would have resolved "a number of key factual disputes about the traffic stop and arrest." Appellant Br. at 32. In particular, Kennedy contends that he was identified as the robber of the AT&T store largely based on Officer Salamas's and Ms. Lang's testimony about his clothing—that he was wearing a gray sweat suit—and that the

7

lost dashcam footage would show that Kennedy was not wearing a sweat suit at the time of arrest.

We do not find Kennedy's due process rights were violated. Even if Kennedy were able to satisfy the first two prongs,[4] he has not shown bad faith on the part of the police led to the loss of the video. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *See Youngblood*, 488 U.S. at 58; *see also United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993). In requiring a showing of bad faith, the Supreme Court sought to limit due process violations "to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58.

Although we think it is important that every effort be made to retain dashcam footage, there is no evidence of bad faith in this case. Officer Salamas and his supervisor testified that they followed procedure in transferring and storing the video, and that upon realizing its loss, consulted the manual and sought technical support but were ultimately informed the footage was irretrievable.

Kennedy does not even contend the officers intentionally destroyed the video, but only that the loss of the footage indicates a failure to follow standard procedure, and that the attempts to recover the data were insufficient. *See* Appellant Br. at 40. Even if true,

---

[4] The exculpatory nature of the evidence in this case is also doubtful. Even if the video were to show, as Kennedy contends, he was not wearing a gray sweat suit at the time of arrest, that would not conclusively show that he was not wearing it hours earlier when the robbery actually occurred.

such errors are not equivalent to an action taken to gain a tactical advantage over the defendant. See *Youngblood*, 488 U.S. at 57; *Deaner,* 1 F.3d at 200 ("While a showing that the government did not follow standard procedure could provide some evidence of bad faith, we have not held that an improper procedure in and of itself implies bad faith."). For these reasons, Kennedy has not established that the loss of the dashcam video violated his due process rights.

## B. Burden Shifting

Kennedy contends that statements made by the prosecution during trial impermissibly shifted the burden of proof from the government to the defense. Because Kennedy did not object to these statements at trial, we review for plain error. *See United States v. Olano*, 507 U.S. 725, 731 (2007). "In order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal 'egregious error or a manifest miscarriage of justice.'" *United States v. Brown,* 254 F.3d 454, 458 (3d Cir. 2001) (quoting *United States v. Price,* 76 F.3d 526, 530 (3d Cir. 1996)).

Kennedy contends that twice during trial, once on direct examination and once during closing statements, the government referenced the fact that the defense did not request fingerprinting or DNA-testing on the firearm recovered from the rental car, "thereby implying that the burden was on Mr. Kennedy to gather and produce evidence." Appellant Br. at 44. Kennedy further contends "the government's attempts to qualify the statement by saying the burden was not on the defendant does not negate the error." *Id.* at 47. The government argues it was entitled to respond to the defense's "immoderate focus on the absence of DNA and fingerprinting." Appellee Br. at 38.

We find the error in this case was not "plain." The plain error exception is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)). Such circumstances are not present here. The government presented evidence linking Kennedy to the firearm including the recovery of the stolen devices from the same rental car in which the gun was found, and the Hertz employee's testimony that Kennedy was adamant about gaining access to the vehicle before the police arrived, which the jury was free to weigh against the lack of DNA and fingerprint evidence. To the extent the prosecutor's remarks were prejudicial, they were mitigated by the prosecutor's clear statement that the burden of production was not on the defendant. Furthermore, given the evidence against Kennedy, it is unlikely that these comments, standing alone would have "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. Accordingly, we do not find egregious circumstances amounting to plain error and this challenge fails.

## C. Crime of Violence

Kennedy was convicted under 18 U.S.C. § 924(c) for brandishing a firearm during and in relation to a "crime of violence." 18 U.S.C. § 924(c)(3) includes two definitions of "crime of violence," known as the "elements clause" and the "residual clause." The "elements clause" encompasses crimes that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The "residual clause" encompasses crimes that "by [their] nature, involve[] a substantial risk that physical force against the person or property of another

10

may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

Kennedy argues: (1) Hobbs Act robbery is not a crime of violence under the elements clause, and (2) that the residual clause is void for vagueness in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). We hold a conviction for Hobbs Act robbery when concurrent with a conviction for brandishing a firearm is a crime of violence under the elements clause, and therefore do not need to reach Kennedy's residual clause argument.

In his opening brief, Kennedy assumed the court's analysis of the predicate offenses under the "elements clause" of § 924(c) would mirror the "categorical approach" taken under the Armed Career Criminal Act, allowing the court to look only at the elements of the crime, not the facts of the specific case. But after his brief was filed, we held in *United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016), *cert. denied,* ___ S. Ct. ___, 2017 WL 3008904 (Oct. 2, 2017), that the rationales for applying the categorical approach were not present when the predicate offense was tried contemporaneously before the same court. *See id.* at 141-42. We adopted instead an alternative approach for determining which predicate offenses qualify as crimes of violence under the "elements clause." *See id.*

Our decision in *Robinson* is on point. *Robinson* involved a defendant concurrently tried and convicted of Hobbs Act robbery and brandishing a firearm in furtherance of a crime of violence under § 924(c). *See id.* at 140. And we concluded "when . . . the two offenses, robbery and brandishing a gun, have been tried together and the jury has reached a guilty verdict on both offenses, the Hobbs Act robbery qualifies as a crime of

11

violence under the 'elements clause' of 18 U.S.C. § 924(c)(3)(A)." *Id.* at 139. Because the same jury that convicted Robinson under § 924(c) found beyond a reasonable doubt that he had brandished a firearm in the act of committing that offense, we reasoned that the court could consider the contemporaneous conviction as "shed[ding] light on the means by which the predicate offense was committed." *Id.* at 143. "The defendant suffers no prejudice because the court is not finding any new facts which are not of record in the case before it." *Id.* "The question, therefore, is not 'is Hobbs Act robbery a crime of violence?' but rather 'is Hobbs Act robbery *committed while brandishing a firearm* a crime of violence?'" *Id.* at 144. And we concluded, "[t]he answer to this question must be yes." *Id.*

This case is nearly identical to *Robinson*. The question is once again, "is Hobbs Act robbery *committed while brandishing a firearm* a crime of violence?" The answer remains yes.

Because we conclude Kennedy's Hobbs Act robbery constitutes a crime of violence as defined in the elements clause of § 924(c), we decline to reach Kennedy's challenge to the constitutionality of the residual clause in light of *Johnson*.

**D. Fourth Amendment challenge**

Finally, Kennedy appeals the denial of his motion to suppress the physical evidence seized during the traffic stop. The District Court denied the motion on the basis that a rental car passenger has no reasonable expectation of privacy and therefore

12

Kennedy lacked standing to bring the Fourth Amendment claim.[5] Although there is a circuit split on whether, in exceptional circumstances, an unauthorized driver can have a reasonable expectation of privacy,[6] no court of appeals has recognized the expectation of privacy for a passenger in a rental car.

Kennedy concedes "the law does not currently recognize a rental car passenger's expectation of privacy," but urges us to take this opportunity to recognize the standing of passengers in rental cars for Fourth Amendment claims. He offers no legal argument for this proposed shift in law. We decline to do so.

**IV.**

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

---

[5] The District Court set forth two other bases for denying Kennedy's suppression motion but he does not challenge these on appeal.

[6] In *United States v. Kennedy*, 638 F.3d 159, 167-68 (3d Cir. 2011), we "join[ed] the majority of circuits in concluding that the lack of cognizable property interest in the rental vehicle and the accompanying right to exclude makes it generally unreasonable for an unauthorized driver to expect privacy in the vehicle." *Id.* at 167. However, we also acknowledged that "extraordinary circumstances . . . might overcome the general rule that we adopt here." *Id.* at 168.