PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-4062
_____

UNITED STATES OF AMERICA

v.

MARCUS WALKER,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cr-00391-002)
District Judge:  Hon. Legrome D. Davis
_____

ARGUED
October 5, 2020

Before:  JORDAN, KRAUSE, and ROTH, *Circuit Judges.*

(Filed: March 5, 2021)
_____

Linda D. Hoffa   [ARGUED]
Dilworth Paxson
1500 Market Street – Suite 3500E
Philadelphia, PA 19102
    *Counsel for Appellant*

Bernadette A. McKeon
Yvonne O. Osirim
Virginia P. Pratter
Robert A. Zauzmer   [ARGUED]
Office of United States Attorney
615 Chestnut Street – Suite 1250
Philadelphia, PA 19106
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Does an attempt to commit a crime of violence categorically qualify as a crime of violence itself?  That is the question we must answer in applying 18 U.S.C. § 924(c), which forbids the use or carrying of a firearm in relation to a crime of violence.  Given the language of § 924(c) and the clear congressional intent behind it, we answer yes: an attempt to commit a crime of violence does categorically qualify as a crime of violence under that statute.

Appellant Marcus Walker challenges his conviction under § 924(c), as well as his convictions for conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). Although we earlier issued a nonprecedential opinion affirming the District Court's judgment on all grounds, we vacated that opinion and granted Walker's request for panel rehearing following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which, in pertinent part, held that one of the definitions of "crime of violence" in § 924(c) is unconstitutionally vague. *Id.* at 2336.

In light of *Davis*, the most significant questions remaining before us are whether attempted Hobbs Act robbery is categorically a crime of violence under the remaining definition, the so-called "elements" clause of § 924(c), 18 U.S.C. § 924(c)(3)(A), and therefore, whether Walker's conviction under § 924(c) can stand. Walker argues that his conviction must be vacated because a person can be convicted for attempted Hobbs Act robbery based on nothing more than an intent to complete the robbery and a non-violent substantial step – in other words, without actually committing a violent act and with only the intent to do so. Although that is true, we nevertheless join the majority of our sister circuits that have considered the issue and hold that, given the plain language of § 924(c), attempted Hobbs Act robbery is categorically a crime of violence. We also once more reject Walker's complaints about evidentiary rulings and the jury instructions. In short, we again affirm.

## I. BACKGROUND

This case stems from a robbery in which Walker acted as the lookout.[1]  While he waited in a car, two of his accomplices robbed a house, one holding a 12-year-old boy at gunpoint.  All of Walker's codefendants pleaded guilty to various counts, and Walker alone went to trial.

At trial, the government presented testimony from three cooperating individuals who were involved in or knew about the robbery, as well as from Agent Patrick Henning, the lead investigator on the case.  In addition to testifying about proffer sessions he had with two of the cooperating witnesses, Henning spoke at length about cell phone records and cell site location information ("CSLI") associated with cell phones used in furtherance of the crimes.[2]

With respect to the cell phone records, Henning testified that an analyst extracted data from cell phones seized from two of the cooperators, which yielded contact lists, call records, and text messages.  In addition, the government obtained through

---

[1] Although Walker waited in the car to act as a lookout, the government presented evidence that Walker organized the robbery – gathering the other robbers, suggesting the target, and urging entry into the house although someone was home.

[2] CSLI identifies the cell towers to which a cell phone connects at certain times, allowing the government to determine the cell phone's approximate location at the times of connection.  *See Carpenter v. United States*, 138 S. Ct. 2206, 2211-12 (2018).

subpoena "call detail records" from the phone companies for those same phones, which included "pages and pages of phone records that list, with timestamps, calls that are made in sequential order[,]" as well as subscriber information. (App. at 686.) From this information, Henning and an analyst organized certain data into slides depicting phone contacts between codefendants during the relevant time frame.

The CSLI evidence was obtained pursuant to a court order, issued under the Stored Communications Act, 18 U.S.C. § 2703.[3] With that information in hand, Henning created a series of maps that identified "points of interest" in the case, such as the location of the robbery target and the latitude and longitude of the cell towers to which Walker's and a codefendant's cell phones had connected at pertinent times. (App. at 707.) When asked how CSLI worked, Henning explained what he knew, but he began by acknowledging that he is not an expert in the technology. Defense counsel promptly objected on the ground that Henning was not an expert witness.[4] At side bar, the parties agreed that "just

---

[3] Section 2703 authorizes courts to order cell phone providers to disclose non-content information if the government "offers specific and articulable facts showing that there are reasonable grounds to believe that … the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(c)(1)(B), (d).

[4] Defense counsel did not object when Henning explained, only moments before, that "[t]his data is cell tower locations, it's where the phones that the men in this robbery were using, where these phones were communicating, which

5

transposing [onto a map] the latitude and longitude" of a cell phone tower to which a phone had connected – information provided by the phone companies – did not require expert analysis, and the District Court allowed Henning to proceed. (App. at 710-11.) Henning went on to explain how the CSLI placed Walker and an accomplice in locations that were consistent with their involvement in the robbery.

The jury convicted Walker on all three counts, those counts being, again, conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The District Court sentenced him to a combined 72 months' imprisonment on the conspiracy and attempt counts and a consecutive term of 60 months on the § 924(c) count.

Walker timely appealed, arguing that the District Court erred in four ways: (1) admitting CSLI obtained without a search warrant as required by *Carpenter v. United States*, 138 S. Ct. 2206 (2018); (2) permitting Agent Henning to vouch for cooperating witnesses' testimony and to violate the Sixth Amendment right to confrontation by testifying to information in a report Henning did not create; (3) allowing conviction on the § 924(c) count when, according to Walker, neither conspiracy to commit Hobbs Act robbery nor attempted Hobbs Act robbery are categorically crimes of violence under § 924(c); and (4) allowing the § 924(c) conviction despite ambiguity as to whether the jury relied on attempted robbery

towers they were communicating with at certain parts—certain parts of certain days." (App. at 706.)

6

or conspiracy to commit robbery as the predicate crime of violence.

As already noted, we had issued a nonprecedential opinion affirming the District Court's judgment and the sentence it imposed, but following the Supreme Court's decision in *Davis*, Walker filed a petition for panel rehearing or for rehearing *en banc*. He argued that *Davis* abrogates *United States v. Robinson*, 844 F.3d 137 (3d Cir. 2016), a case we had relied upon in denying him relief in the earlier appeal of his § 924(c) conviction. We agreed that *Robinson* is no longer controlling and granted his petition for panel rehearing. Having vacated the original opinion and judgment, we now address all four of Walker's arguments again.

## II.    DISCUSSION[5]

### A.    Admissibility of the CSLI

We first consider the arguments related to CSLI. Walker's primary argument begins with the Supreme Court's decision in *Carpenter v. United States*. In *Carpenter*, the Court

---

[5] The District Court had jurisdiction under 18 U.S.C. § 231. We have jurisdiction under 28 U.S.C. § 1291. Because Walker raises these issues for the first time on appeal, we review for plain error. *United States v. Saada*, 212 F.3d 210, 223 (3d Cir. 2000). Under the plain error standard, the defendant must show that there was (1) an actual error, (2) that is plain, (3) that affects the complaining party's "substantial rights," and (4) that "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 733-36 (1993) (citations omitted).

7

held that compliance with the Stored Communications Act alone is not sufficient to legally access historical cell-site records because the showing required of the government by the Stored Communications Act "falls well short of the probable cause required for a warrant." 138 S. Ct. at 2221. According to Walker, the District Court thus plainly erred when it allowed the government to introduce CSLI obtained without a warrant. Although it is now true that law enforcement must generally secure a search warrant based on probable cause to obtain CSLI, *see id.*, Walker's argument is foreclosed by our decision in *United States v. Goldstein*, which holds that the exclusionary rule does not apply when the government "had an objectively reasonable good faith belief that its conduct was legal when it acquired [the] CSLI." 914 F.3d 200, 202 (3d Cir. 2019). As in *Goldstein*, the agents here obtained the CSLI evidence in good faith reliance on a then-valid judicial order, a then-valid statute, and then-binding appellate authority. *See id.* at 204. The District Court, therefore, did not commit any error, much less plain error, by admitting the CSLI into evidence.

## B.    Agent Henning's Testimony

Walker next argues that the District Court committed plain error by permitting Henning to testify about the phone records and CSLI because that testimony was based on a report Henning did not create and therefore the testimony violated Walker's Confrontation Clause rights under the Sixth Amendment. Walker also argues that Henning improperly vouched for the testimony of the cooperating witnesses.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]" U.S. Const.

amend. VI. It generally bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

Although Walker asserts that Henning was testifying about what another investigator did, it is at least arguable that he was speaking about his own work. The record contains evidence that Henning personally reviewed the data at issue, even though he worked "[i]n conjunction with an … analyst." (App. at 695.)[6] Thus, it appears that Henning had an independent basis on which to testify about both the phone

---

[6] *See also* App. at 708 ("Q: What did you do with the cell site data? A: I reviewed … the information from the phone companies[.] I was able to see cell site latitude and longitude locations, which I can just go right into a Google Maps, for example, put in those points and see where those towers were."); 722 ("Q: All right. Now here we have the longer list of calls. Let's, could you please explain now what this slide represents, looks -- represents in total? A: Yes. I essentially went through each day beginning July 1st all the way until July 13th, and I looked at the records that I received from AT&T for Marcus -- Marcus Walker's phone to see when his first phone call was essentially being made each morning and to see where, which tower it was hitting off of. And consistently every single day in the morning when his phone call or when his phone was being activated or being used, it was hit -- hitting off of a tower just a few blocks away from where his residence is.").

records and the CSLI.[7] *Cf. Bullcoming v. New Mexico*, 564 U.S. 647, 662 (2011) (finding relevant to its conclusion that a Confrontation-Clause violation occurred that the State did not contend that the testifying analyst – who did not perform the lab test at issue – had an "independent opinion" concerning the test results (citation omitted)).

Assuming, however, that there was some Confrontation-Clause error in permitting Henning's testimony about those matters, it was not plain. There is no consensus concerning the proper bounds of the Confrontation Clause when multiple people collaborate to make a testimonial statement.[8] What little law there is supports the government's contention that the testimony Henning proffered was permissible. *See Bullcoming*, 564 U.S. at 672-73 (Sotomayor, J., concurring in part) (noting that it was "not a case in which the person testifying [was] a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the

---

[7] *See* App. at 774 ("THE COURT: This was done in your presence, right, the work of the analyst, lest suggesting that - - AGENT HENNING: Yes, this was a collaborative effort.").

[8] The Supreme Court's Confrontation-Clause jurisprudence does not set entirely clear boundaries. *See Stuart v. Alabama*, 139 S. Ct. 36, 36 (2018) (Gorsuch, J., dissenting from denial of writ of certiorari) (observing that "[t]his Court's most recent foray in [Confrontation-Clause jurisprudence relating to forensic testing], *Williams v. Illinois*, 567 U.S. 50 (2012), yielded no majority and its various opinions have sown confusion in courts across the country.").

[testimonial statement] at issue"); *Grim v. Fisher*, 816 F.3d 296, 307 (5th Cir. 2016) ("[A]t most, *Bullcoming* holds that if scientist A performed the test, the prosecution cannot prove a particular fact contained in scientist A's testimonial certification by offering the in-court testimony of scientist B, if scientist B neither signed the certification nor performed or observed the test. But *Bullcoming* does not hold that scientist B cannot testify even if he has a sufficient degree of involvement with the forensic testing."); *Meras v. Sisto*, 676 F.3d 1184, 1192 (9th Cir. 2012) (Bea, J., concurring in part) ("*Bullcoming* did 'not address what degree of involvement [with a report's preparation] is sufficient' to allow a supervisor to testify in place of the primary author, but [the supervisor] may have had enough involvement here to satisfy the Confrontation Clause." (citation omitted)). The claim of error is especially weak in this case, given the parties' agreement that the records themselves were admissible.[9]

---

[9] In addition, it is not obvious to us, and Walker has not described, how the alleged error affected his substantial rights. *See United States v. Jimenez*, 513 F.3d 62, 78-79 (3d Cir. 2008) (rejecting a Confrontation Clause challenge where admission of the evidence "simply had no effect on the verdict"). Three cooperating witnesses testified that Walker participated in the robbery. The defense engaged in a lengthy cross-examination of Henning and did not challenge the accuracy of the data reflected on his slides or cite any discrepancies between the phone record exhibits and the underlying records. Thus, even though the phone records and CSLI were corroborating evidence, Walker has not shown a deprivation of substantial rights on plain-error review.

Walker's vouching argument also fails. Vouching occurs when a prosecutor, or testimony elicited by a prosecutor, (1) "assure[s] the jury that the testimony of a Government witness is credible, and (2) this assurance [is] based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Berrios*, 676 F.3d 118, 133-34 (3d Cir. 2012) (citation and internal quotation marks omitted). Bolstering witness testimony in that way is forbidden, *id.*, and would be a problem here if Henning's testimony did what Walker claims. But it did not.

There is no sensible vouching challenge to be made because Henning's testimony did not "invite[] a plausible jury inference of extra-record proof of reliability[.]" *United States v. Milan*, 304 F.3d 273, 290 (3d Cir. 2002). After the cooperators themselves had testified and been cross-examined about their version of the events, Henning testified about his interviews with them and the cell phone data that he analyzed, confirming that the cell phone data was "consistent with [his] investigation[,]" that is, consistent with what the jury heard about the various locations related to the robbery. (App. at 731-32.) Because Henning's testimony cannot fairly be interpreted as improperly bolstering the credibility of the cooperators through information not in the record, Walker's vouching argument fails. *See Milan*, 304 F.3d at 290 (finding no plain error where the defendant failed "to show that the prosecutors referred to facts not adduced at trial or offered personal opinions to bolster the integrity and believability of their witnesses").

## C.	Attempted Hobbs Act Robbery as Predicate for § 924(c) Conviction[10]

Walker next argues that, after the Supreme Court's decision in *Davis*, attempted Hobbs Act robbery cannot serve as a valid predicate crime of violence under the elements clause of § 924(c).  We disagree.

Prior to *Davis*, there were two statutory avenues available for determining an offense to be a crime of violence under § 924(c): either through what is called the "residual" clause or through the elements clause of the statute.  18 U.S.C. § 924(c)(3).  The residual clause defines a "crime of violence" as "an offense that is a felony and – that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  *Id.* § 924(c)(3)(B).  In *Davis*, however, the Supreme Court held that language to be unconstitutionally

---

[10] Because the jury instructions make clear that the predicate crime for Walker's § 924(c) conviction was attempted Hobbs Act robbery (*see infra* section II.D.), we do not need to consider whether conspiracy to commit Hobbs Act robbery is categorically a crime of violence under § 924(c). We note, however, the government's concession that "Walker correctly observes that the government, and several appellate courts, have acknowledged after *Davis* that a conspiracy crime is not a proper 924(c) predicate under the elements clause." (Appellee Sept. 2019 Suppl. Ltr. at 2.)  *See, e.g.*, *United States v. Barrett*, 937 F.3d 126, 130 (2d Cir. 2019); *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019); *United States v. Lewis*, 907 F.3d 891, 895 (5th Cir. 2018).

vague. *Davis*, 139 S. Ct. at 2336. Accordingly, an offense is now a "crime of violence" within the meaning of the statute only if it meets the definition contained in the elements clause, § 924(c)(3)(A). That clause defines a "crime of violence" as "an offense that is a felony and – has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

The Supreme Court in *Davis* also indicated that the categorical approach is to be used when deciding whether a conviction is a crime of violence under the elements clause. *Davis*, 139 S. Ct. at 2328. We accordingly must ask whether the minimum conduct punishable as attempted Hobbs Act robbery qualifies as a crime of violence. *See Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013) (explaining that, under the categorical approach, we "presume that the conviction rested upon nothing more than the least of the act criminalized, and then determine whether even those acts are encompassed by the generic federal [definition of § 924(c)]" (citations and internal quotation marks omitted)).

Our sister courts of appeals are split on the answer to that question. The Fifth, Seventh, Ninth, and Eleventh Circuits have all held that attempted Hobbs Act robbery is categorically a crime of violence under the elements clause of § 924(c). *United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020); *United States v. Ingram*, 947 F.3d 1021, 1025-26 (7th Cir. 2020); *United States v. St. Hubert*, 909 F.3d 335, 351-53 (11th Cir. 2018), *abrogated in part on other grounds by Davis*, 139 S. Ct. 2319 (2019); *see United States v. Smith*, 957 F.3d 590, 596 (5th Cir. 2020) (holding that an "attempt offense that includes the specific intention to commit a COV ["crime of violence"] and a substantial step in an effort to bring about or

14

accomplish that COV, is in and of itself a COV under the elements clause.").  The Fourth Circuit disagreed, however, and recently adopted the position expressed in some dissenting opinions from those other courts, holding that attempted Hobbs Act robbery is not categorically a crime of violence.  *United States v. Taylor*, 979 F.3d 203, 209-10 (4th Cir. 2020); *see also United States v. Tucker*, No. 18-0119, 2020 WL 93951, at \*6 (E.D.N.Y. Jan. 8, 2020) ("[T]his Court concurs with [dissenting] judges of the 11th Circuit that, 'it is incorrect to say that a person necessarily attempts to use physical force within the meaning of 924(c)'s elements clause just because he attempts a crime that, if completed would be violent.'" (citation omitted)).  Given the statutory language and the clear congressional intent behind it, we join the courts that hold attempted Hobbs Act robbery is categorically a crime of violence.

### 1. *Completed Hobbs Act Robbery*

Our reasoning begins with a consideration of whether Hobbs Act robbery as a completed act, rather than an attempt, is categorically a crime of violence.  The Hobbs Act defines "robbery" as:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). Every court of appeals to consider the issue has held that Hobbs Act robbery is indeed a crime of violence for purposes of § 924(c),[11] and we agree. Although we have no binding precedent of our own on this issue, a concurring opinion in *United States v. Robinson* concluded that "Hobbs Act robbery is categorically a crime of violence under Section 924(c)(3)." 844 F.3d 137, 151 (3d Cir. 2016) (Fuentes, J., concurring). The opinion reasoned that, because the Supreme Court has defined "physical force" to be simply "force capable of causing physical pain or injury to another person," all the alternative means of committing a Hobbs Act robbery – actual or threatened force, or violence, or fear of injury – can satisfy § 924(c)(3)(A)'s requirement of "use, attempted use, or threatened use of physical force[.]" *Id.* (citations omitted). In other words, "by definition, a jury could have found 'actual or threatened force, or violence, or fear of injury' only if the defendant used, attempted to use, or threatened to use physical force because 'fear of injury' cannot occur without at least a threat of physical force, and vice versa." *Id.*

---

[11] *See United States v. Dominguez,* 954 F.3d 1251, 1261 (9th Cir. 2020); *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019); *United States v. Jones*, 919 F.3d 1064, 1072 (8th Cir. 2019); *United States v. Garcia-Ortiz*, 904 F.3d 102, 106-09 (1st Cir. 2018); *United States v. Melgar-Cabrera*, 892 F.3d 1053, 1060-66 (10th Cir. 2018); *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018); *United States v. Fox*, 878 F.3d 574, 579 (7th Cir. 2017); *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017); *United States v. Buck*, 847 F.3d 267, 275-76 (5th Cir. 2017); *In re St. Fleur*, 824 F.3d 1337, 1340-41 (11th Cir. 2016).

The concurrence further noted that "Congress specifically singled out the federal bank robbery statute as a crime that is the prototypical 'crime of violence' captured by Section 924(c). Yet, the federal bank robbery statute, 18 U.S.C. § 2113(a), is analogous to Hobbs Act robbery." *Id.* at 151 n.28 (citing S. Rep. No. 98-225, at 312-13 (1983)) (other citation omitted). Both involve force, violence, or intimidation, described in various ways, from which "we can surmise that Congress intended the 'physical force' element to be satisfied by intimidation or, analogously, fear of injury." *Id.*

That analysis is thoroughly persuasive, but Walker disputes it. He argues that Hobbs Act robbery cannot be a crime of violence because it can be completed by taking money from a victim "through fear of injury to the victim's intangible property" without the use or threatened use of force. (Appellant Dec. 2020 Suppl. Ltr. at 3.) Not so.

The history of the Hobbs Act makes clear that a physical act is a key component of Hobbs Act robbery. We long ago explained why in *United States v. Nedley*, 255 F.2d 350 (3d Cir. 1958). During the promulgation of the Hobbs Act, Representative Sam Hobbs of Alabama and several other members of Congress confirmed that the terms "robbery" and "extortion" in the Act were based on the then-existing New York penal laws, which defined robbery consistently with the common law definition of that crime. *Id.* at 355-56. "The legislative debates are replete with statements that the conduct punishable under the Hobbs Act was already punishable under state robbery and extortion statutes." *United States v. Culbert*, 435 U.S. 371, 379 (1978) (citations omitted). And because "[r]obbery, at common law, is the felonious and forcible taking from the person of another of goods or money to any value by

17

violence or putting him in fear[,]" *Nedley*, 255 F.2d at 356 (citation and internal quotation marks omitted), it follows that a non-forcible taking based on fear of injury to intangible property would not be sufficient to satisfy the force requirement of Hobbs Act robbery, since Hobbs Act robbery is simply a common law robbery that affects interstate commerce.[12]

Therefore, consistent with the reasoning in the concurrence in *Robinson* and with the position taken by our

---

[12] Relying on the Supreme Court's decision in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), the First and Ninth Circuits have similarly held that a hypothetical robbery involving intangible economic interests does not eliminate Hobbs Act robbery as a crime of violence under § 924(c) "because [the defendant] fails to point to any realistic scenario in which a robber could commit Hobbs Act robbery by placing his victim in fear of injury to an intangible economic interest." *Dominguez*, 954 F.3d at 1260; *see also Garcia-Ortiz*, 904 F.3d at 107 (rejecting the argument that Hobbs Act robbery can be committed by threatening to devalue some intangible economic interest because "we need not consider a theorized scenario unless there is a 'realistic probability' that courts would apply the law to find an offense in such a scenario"). We reach the same conclusion without reliance on the realistic-probability inquiry. *See Salmoran v. Att'y Gen.*, 909 F.3d 73, 81 (3d Cir. 2018) ("[W]here the elements of the crime of conviction are not the same as the elements of the generic federal offense ... the realistic probability inquiry ... is simply not meant to apply[.]" (citations and internal quotation marks omitted)).

18

sister circuits, we conclude that completed Hobbs Act robbery necessarily has as an element the use, attempted use, or threatened use of physical force against the person or property of another and is therefore categorically a crime of violence.

## 2. *Attempted Hobbs Act Robbery*

With that in mind, we turn to a consideration of attempted Hobbs Act robbery and note at the outset the general definition of attempt offenses. "[A]n attempt conviction requires evidence that a defendant (1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believes them to be, constitutes a substantial step in the commission of the crime." *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) (citation omitted). The elements clause of § 924(c) describes a crime of violence as including the attempted use of force. More specifically, it says a crime of violence is "an offense that is a felony and – has as an element the use, *attempted use*, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A) (emphasis added). As the government points out, "[t]he Eleventh Circuit and other courts of appeals have persuasively held that an attempt to commit a crime that requires the use, attempted use, or threatened use of physical force is itself a 'crime of violence' under Section 924(c)(3)(A) and similarly worded elements clause provisions." (Appellee Sept. 2019 Suppl. Ltr. at 2.) Put simply, those courts hold that, because § 924(c) explicitly includes "attempted use" of physical force in the definition of a crime of violence, a conviction for attempt to commit a crime of violence is necessarily sufficient to serve as a predicate under § 924(c). There is, however, a contrary view, and so, to

19

explain our own reasoning, we first lay out the competing arguments from other courts.

The view that attempted Hobbs Act robbery is categorically a crime of violence begins with the Seventh Circuit's decision in *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017), *cert. denied*, 139 S. Ct. 352 (2018). The court in *Hill* considered whether a defendant's conviction for attempted murder qualified as a violent felony under the Armed Career Criminal Act ("ACCA"). *Id.* at 718. Similar to § 924(c), the ACCA has an elements clause that labels a violent felony as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id.*

The defendant in *Hill* argued that, because an attempt crime under Illinois law consists of setting out to commit a crime and taking a substantial step toward accomplishing that end, it is possible to attempt murder without using, attempting, or threatening physical force. *Id.* at 719. One might, for example, draw up assassination plans and buy a gun without any actual use, attempted use, or threatened use of physical force. The Seventh Circuit rejected that argument, holding that, "[w]hen a substantive offense would be a violent felony under [the ACCA] and similar statutes, an attempt to commit that offense also is a violent felony." *Id.* The court declared that "an attempt to commit a crime should be treated as an attempt to commit every element of that crime[.]" *Id.* Later, in *United States v. Ingram*, the Seventh Circuit applied the holding from *Hill* to conclude that attempted Hobbs Act robbery is, for purposes of § 924(c), categorically a crime of violence. 947 F.3d at 1026.

20

In the meantime, the Eleventh Circuit also applied the reasoning from *Hill* to a § 924(c) case. In *United States v. St. Hubert*, the court concluded that, like completed Hobbs Act robbery, attempted Hobbs Act robbery qualifies as a crime of violence. The court said that "because the taking of property from a person against his will in the forcible manner required by [the Hobbs Act] necessarily includes the use, attempted use, or threatened use of physical force, then by extension the attempted taking of such property from a person in the same forcible manner must also include at least the 'attempted use' of force." 909 F.3d at 351 (citations omitted).

When the Eleventh Circuit denied rehearing *en banc* in *St. Hubert*, a dissent challenged the reasoning adopted from *Hill*. *United States v. St. Hubert*, 918 F.3d 1174, 1210 (11th Cir. 2019) (Pryor, Jill, J. joined by Wilson and Martin, JJ., dissenting) (hereinafter "*St. Hubert II*"). That dissent rejected the conclusion that an attempt to commit a crime should be treated as an attempt to commit every element of that crime, saying instead that "[*i*]*ntending* to commit each element of a crime involving the use of force simply is not the same as *attempting* to commit each element of that crime." *Id.* at 1212. According to the dissent, it is incorrect to say that a person necessarily attempts to use physical force within the meaning of § 924(c) just because he attempts a crime that, if completed, would involve force. *Id.*

The Ninth Circuit soon thereafter in *United States v. Dominguez* sided with the Seventh and Eleventh Circuits in holding that, when a substantive offense would be a crime of violence under § 924(c), an attempt to commit that offense is also a crime of violence. 954 F.3d at 1261. It said that the "reasons for this are straightforward" because § 924(c)

21

"explicitly includes as crimes of violence offenses that have as an element the 'attempted use' or 'threatened use' of force. In order to be guilty of attempt, a defendant must intend to commit every element of the completed crime. … An attempt to commit a crime should therefore be treated as an attempt to commit every element of that crime." *Id.* (citations omitted).[13] The Fifth Circuit also agreed, adopting the same reasoning in *United States v. Smith* and holding that a predicate attempt offense that includes the specific intention to commit a crime of violence and a substantial step to bring about or accomplish that crime of violence, "is in and of itself a [crime of violence] under the elements clause." 957 F.3d at 596.

Finally, and most recently, the Fourth Circuit split from the consensus and adopted the dissenting view, holding that "[w]here a defendant takes a nonviolent substantial step toward threatening to use physical force … the defendant has not used, attempted to use, or threatened to use physical force. Rather, the defendant has merely *attempted to threaten* to use physical

---

[13] Reiterating the concerns of the Eleventh Circuit dissent, a dissenting opinion in *Dominguez* challenged the majority's conclusion that an attempt to commit a crime should be treated as an attempt to commit every element of that crime. 954 F.3d at 1264 (Nguyen, J., concurring in part and dissenting in part). It argued that the majority's conclusion "doesn't follow as a matter of law or logic. There is no legal basis to conclude from an attempt conviction that the defendant attempted to commit every element of the underlying crime. And there's a logical gap: the majority conflates *attempt* and *intent*. Only by substituting 'intended' for 'attempted' does the majority's analysis make sense." *Id.*

22

force. The plain text of § 924(c)(3)(A) does not cover such conduct." *Taylor*, 979 F.3d at 208.

In the present case, Walker of course urges us to reject the reasoning of the Fifth, Seventh, Ninth, and Eleventh Circuits and instead adopt the approach taken by the Fourth Circuit. Specifically, he argues that attempted Hobbs Act robbery is not a crime of violence because "it does not categorically require the attempted use of physical force— much less the use or threatened use of physical force—against the person or property of another." (Appellant Sept. 2019 Suppl. Ltr. at 2.) Quoting the dissent in *St. Hubert II*, he says that "[*i*]*ntending* to commit each element of a crime involving the use of force simply is not the same as *attempting* to commit each element of that crime." (*Id.* at 3.) Finally, he argues that attempted Hobbs Act robbery cannot categorically be a crime of violence because a person can be convicted of Hobbs Act robbery based on an empty threat of force. It is possible, he says, for a person "with no intention of using 'actual' force" to be convicted of attempted Hobbs Act robbery. (*Id.* at 4.)

Although it is true that an intent to act is not the equivalent of an attempt to act, we nevertheless are unpersuaded by Walker's arguments and instead agree with the majority of courts of appeals that § 924(c) does categorically encompass attempted Hobbs Act robbery. We think it apparent that Congress meant for all attempted crimes of violence to be captured by the elements clause of § 924(c), and courts are not free to disregard that direction and hold otherwise.

Beginning with the language of the statute, we read the phrase "has as an element the … attempted use … of physical force" to capture attempt offenses because the word "attempt"

23

is a term of art in criminal law that attaches liability to an incomplete crime when "the perpetrator not only intended to commit the completed offense, but also performed …. an 'overt act' that constitutes a 'substantial step' toward completing the offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 106-07 (2007) (citations omitted). The word is not used in the general sense of something unsuccessfully tried. To hold that attempt crimes are beyond the reach of § 924(c) based on a generic definition of "attempt" would be to disregard how that word has been "used in the law for centuries."[14] *Id.* at 107; *see id.* at 108 n.4 (concluding that an indictment charging an

---

[14] The dissent to the Ninth Circuit's *Dominguez* opinion argued that an attempted use of force under § 924(c) "refers to a defendant's physical act of trying (but failing) to use violent physical force" (i.e., generic attempt versus attempt as an offense). *Dominguez*, 954 F.3d at 1264 (Nguyen, J., dissenting in part). According to that dissent, because the other two qualifying elements – *using* and *threatening to use* force – obviously refer to acts, we must interpret "attempted use" similarly under the principle of *noscitur a sociis*, or interpreting an ambiguous item in a list to possess the same attribute as its companion items in that list. *Id.* But unlike "use of force" and "threatened use of force," we can find no crime that has attempted use of force as an element of a completed offense. As the name suggests, the crimes that turn on attempted acts of force are in fact attempt offenses. *Cf. United States v. Jackson*, 964 F.3d 197, 203 (3d Cir. 2020) ("[A]ccording to the 'anti-surplusage' canon, '[i]t is our duty to give effect, if possible, to every clause and word of a statute.'" (second alteration in original) (citing *Duncan v. Walker*, 533 U.S. 167, 174, (2001)).

attempt crime need not specifically allege a particular overt act because "we think that the 'substantial step' requirement is implicit in the word 'attempt'"); *Sullivan v. Stroop*, 496 U.S. 478, 483 (1990) ("But where a phrase in a statute appears to have become a term of art … any attempt to break down the term into its constituent words is not apt to illuminate its meaning."); *cf. United States v. Nasir*, 982 F.3d 144, 159 (3d Cir. 2020) (*en banc*) (noting that the similar definition of crime of violence under the United States Sentencing Guidelines § 4B1.2(a) does explicitly include inchoate crimes). To give the word "attempt" its due, we think it best read in its technical sense.

The manner in which federal attempt crimes are typically defined further supports that reading. Rather than rely on a general statute outlawing all attempts to violate federal criminal law, Congress has chosen to interweave prohibitions on attempted crimes within the statutes defining the underlying substantive offenses.[15] In those statutes, it is

---

[15] *See, e.g.*, 18 U.S.C. §§ 844(f)(1) (destruction of U.S. property) ("Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, [U.S. property,] ... shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both."); 1951(a) (robbery and extortion) ("Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do … shall be fined under this title or imprisoned not more than twenty years, or both."); 1956(a)(1) (money laundering) ("Whoever ... conducts or attempts to conduct such a financial transaction ... shall be sentenced to a fine of not more than $500,000 ... or

---

clear that the words "attempts to" authorize the prosecution of attempt offenses. We similarly read the words "attempted use" in the elements clause of § 924(c) to capture attempt offenses. Again, to hold that attempted crimes of violence are not categorically crimes of violence themselves would ignore the time-tested meaning of "attempt" as used throughout the criminal code. Even in the odd realm of the categorical approach, "we shall not read into the statute a definition … so obviously ill suited to its purposes." *Taylor v. United States*, 495 U.S. 575, 594 (1990).

Our own prior interpretations of congressional intent further support the conclusion that attempted crimes of violence qualify as crimes of violence themselves. Section 924(c) assures additional punishment for those who create heightened risk or cause additional harm through the possession or use of a firearm in connection with a crime of violence or a drug trafficking offense. We have recognized that "Congress's 'overriding purpose' in passing Section 924(c) 'was to combat the increasing use of guns to commit federal felonies.' … The chief sponsor of this provision explained that 'the provision seeks to persuade the man who is *tempted* to commit a Federal felony to leave his gun at home.'" *United States v. Walker*, 473 F.3d 71, 78 (3d Cir. 2007) (emphasis added) (quoting *Simpson v. United States*, 435 U.S. 6, 10 (1978); *Muscarello v. United States*, 524 U.S. 125, 132 (1998)).

---

imprisonment for not more than twenty years, or both."). Reading "attempted use" to capture attempt offenses is thus consistent with broader federal treatment of attempt offenses.

It seems abundantly clear that, by adding "attempted use" to the elements clause, Congress was not inviting us to engage in the casuistry so often associated with the categorical approach and to thereby read those same words out of the statute. The elected lawmakers wanted to categorically include attempt crimes in the statutory definition, and they said so plainly. *Cf. Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019) (Cautioning that in the application of the categorical approach, statutes should not be interpreted in a manner that would eliminate most crimes of the same type from the generic definition selected by Congress because doing so "not only would defy common sense, but also would defeat Congress'[s] stated objective of imposing enhanced punishment …. We should not lightly conclude that Congress enacted a self-defeating statute."). We thus follow the majority rule that attempted Hobbs Act robbery is categorically a crime of violence under § 924(c) and accordingly hold that Walker's attack on his firearms conviction fails.

### D.    Jury Instructions

Although not affected by the Supreme Court's *Davis* decision, Walker also renews his argument that the jury instructions in this case were insufficient because they leave open to doubt whether his § 924(c) conviction rested on his having conspired to commit Hobbs Act robbery or his having attempted to commit such robbery. There is a serious argument that only the latter can properly serve as a predicate for a § 924(c) conviction.[16] That argument is immaterial now,

---

[16] *Supra* note 10 (explaining that the government concedes that "Walker correctly observes that the government, and several appellate courts, have acknowledged after *Davis*

however, because the instructions made it sufficiently clear that the attempt was the predicate offense.

The jury was instructed that, to convict Walker on the §924(c) count, it had to find beyond a reasonable doubt:

> that the conspirator or the accomplice committed the crime of *attempted* interference with interstate commerce by robbery. So you would have to find … that during and in relation to the commission of that *attempted* Hobbs Act robbery, the Defendant or one of his accomplices or conspirators knowingly used or carried a firearm.

(App. at 885 (emphasis added).) Although the word "attempt" was repeatedly used in the instruction and the predicate crime was expressly identified as "attempted Hobbs Act robbery," Walker says the District Court erred in telling the jury that a conviction could be sustained if the "[d]efendant *or one of his accomplices or conspirators* knowingly used or carried a firearm." (*Id.* (emphasis added); Appellant Sept. 2019 Suppl. Ltr. at 5.)

We remain unpersuaded. As the government points out, nothing in *Davis* affects our earlier case-specific conclusion that the District Court was clear enough when it instructed the jury on the attempt charge. That suffices for affirmance.

---

that a conspiracy crime is *not* a proper 924(c) predicate under the elements clause.") (quoting Appellee Sept. 2019 Suppl. Ltr. at 2 (emphasis added)).

28

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment and sentence.