NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1114
_____

UNITED STATES OF AMERICA

v.

JANELL ROBINSON,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 2-18-cr-00108-001)
District Judge: Honorable Susan D. Wigenton

_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 26, 2021

BEFORE:  GREENAWAY, JR., PHIPPS, and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: January 20, 2022)
_____

OPINION[*]
_____

COWEN, <u>Circuit</u> <u>Judge</u>.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Defendant Janell Robinson appeals from the criminal judgment and sentence entered by the United States District Court for the District of New Jersey. We will affirm.

I.

A grand jury charged Robinson (a City of Newark police officer) with: (1) conspiracy to commit mail and wire fraud, contrary to 18 U.S.C. §§ 1341, 1343, and 1346, and in violation of 18 U.S.C. § 1349; (2) mail fraud in violation of 18 U.S.C. §§ 1341, 1346, and 2; and (3) conspiracy to commit extortion under color of official right affecting commerce under 18 U.S.C. § 1951(a).

In short, this case arose out of Robinson's business dealings with the Newark Watershed Conservation Development Corporation ("NWCDC"), a non-profit corporation organized to oversee properties and facilities owned by the City of Newark ("City" or "Newark") supplying water to the City's residents. The government alleged that Robinson, first personally and then through a company (Protected and Secured Services, LLC ("P&S")) purportedly owned by her brother with no experience and virtually no assets or employees, fraudulently billed the NWCDC almost $300,000 for services supposedly rendered to protect Newark's water supply against bioterrorism. Robinson, who was not a qualified anti-terrorism expert, provided little if anything of value in exchange for these payments. "She was paid because her good friend, Linda Watkins-Brashear, was the Executive Director of the NWCDC," and, in return for the fraudulent income stream, Robinson made periodic kickback payments to Watkins-

2

Brashear amounting to approximately $50,000.  (Appellee's Brief at 1.)

The jury found Robinson guilty on all three counts.  The District Court sentenced Robinson to a below-Guidelines term of 108 months of imprisonment (followed by three years of supervised release) and imposed a money judgment of forfeiture in the amount of $288,950.

II.

Robinson argues that her conviction for conspiracy to commit extortion must be reversed because the government violated its disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), by not providing the defense with a 2014 report from the New Jersey Office of the State Comptroller ("OSC").[1]  According to her, the OSC "found that the NWCDC 'was not a government agency, and was not a department of the City,'" and this finding directly negates the "public official" element of the charge of conspiracy to commit extortion under color of law affecting commerce [i.e., "under color of official right" Hobbs Act extortion].  (Appellant's Brief at 14 (quoting A1158).)  However, we agree with the government that the OSC report did not contain material exculpatory information.  See, e.g., Turner v. United States, 137 S. Ct. 1885, 1893 (2017) (stating that materiality means that, had evidence been disclosed, there was reasonable probability of different result).  In fact, Robinson actually quotes from another defendant's appellate brief as opposed to the OSC report itself.  In any event, New Jersey law states that, upon

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231.  We have appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

We review Robinson's unpreserved Brady claim for plain error.  See, e.g., United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003).

executing a contract with a city, a duly incorporated non-profit organization shall be deemed as providing essential governmental functions on behalf of the city and, to the extent permitted by the contract, shall exercise the powers and responsibilities of the city with respect to the provision of water supply services. See N.J. Stat. Ann. § 40A:11-5.1. The government accordingly presented extensive testimony as well as documentary evidence confirming that, despite its nominal corporate status, "the NWCDC [and its Executive Director] stood in the City's shoes, and enjoyed the same color of official right, when it came to [performing] [their] essential role in providing water to Newark residents."[2]  (Appellee's Brief at 29.)

According to Robinson, the prosecution engaged in prejudicial misconduct by (1) vouching for the credibility of one of its witnesses and comparing his credentials to those held by Robinson and (2) asking Robinson to assess the credibility of a government witness and referring to this improper testimony during the prosecution's rebuttal.[3]  We

---

[2] Specifically, Watkins-Brashear was appointed as the Executive Director of the NWCDC by the Mayor of Newark, and the entity was required to include City officials as members of its Board of Directors (i.e., the Mayor was Chair of the Board of Directors, and, until 2012, two members were selected from the Newark Municipal Council). Watkins-Brashear submitted NWCDC's budgets to both the City and the Board of Directors, and the NWCDC was mostly funded by the City.  The NWCDC was created by Newark to manage the extensive water supply properties and facilities owned by the City itself.  In fact, the entity was widely recognized as a "part of Newark" (A49). Individuals moved seamlessly between the City and the NWCDC, and the Newark Police Department regarded the NWCDC as synonymous with the City for purposes of its rules governing conflicts of interest.  Finally, the contract at issue in this case was voted on and approved by Newark's then-Mayor as a member of the NWCDC Board of Directors.

[3] The defense did not object to the prosecutor's allegedly improper cross-examination (or seek to strike Robinson's response).  Although "her counsel did object to the [summation] remark as 'improper rebuttal,' he did not [specifically] claim the prosecutor improperly asked Robinson to comment on another witness's credibility."

4

disagree. "Vouching occurs when a prosecutor, or testimony elicited by a prosecutor, (1) 'assure[s] the jury that the testimony of a Government witness is credible, and (2) this assurance [is] based on either the prosecutor's knowledge or other information not contained in the record.'" United States v. Walker, 990 F.3d 316, 323 (3d Cir. 2021) (alterations in original) (quoting United States v. Berrios, 676 F.3d 118, 133-34 (3d Cir. 2012)). Responding to Robinson's defense that she and P&S provided legitimate consulting work (including several threat assessments), the prosecutor properly highlighted the different levels of qualifications and experience possessed by Robinson (a patrol officer who worked on community outreach programs, owned a hair salon and Rita's Italian water ice business, never worked in a counterterrorism unit, held no certifications as an anti-terrorism or bioterrorism expert, and did not have a degree in chemical engineering or biological sciences) and Miguel Costa (a forensic accountant for the FBI who had a master's degree in finance and an undergraduate degree in accounting with experience working as auditor for a bank, the New Jersey Turnpike Authority, and a large accounting firm). With regard to the impeachment claim, Edward Lewis testified that, as a P&S security guard, he gave his log sheets to "Kevin" or "Andrew"—but not to Robinson. However, Robinson testified on cross-examination that Lewis did provide her with copies of the log sheets. The prosecutor properly confronted Robinson with this

_____

(Appellee's Brief at 16 (quoting A1006).) Accordingly, we review this issue regarding Robinson's testimony for plain error. See, e.g., United States v. Kolodesh, 787 F.3d 224, 230 n.4 (3d Cir. 2015); Brennan, 326 F.3d at 182. Defense counsel did object to the prosecutor's remarks purportedly vouching for the government's expert, and we thereby apply the abuse of discretion standard. See, e.g., United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001).

5

apparent contradiction and did not specifically ask her whether another witness was lying (it was Robinson herself who suggested that Lewis told a lie). See, e.g., United States v. Greenidge, 495 F.3d 85, 99-100 (3d Cir. 2007) (finding no abuse of discretion where government impeached by contradiction based on testimony that defendant volunteered). In turn, the prosecutor did not commit any reversible error by indicating that the jury could assess Robinson's own credibility based in part on her attacking multiple witnesses as either lying or mistaken (see also, e.g., A1006 (asking rhetorically "[c]an everyone be lying or mistaken about defendant's conduct" and whether this was "some sort of conspiracy to frame defendant")). See, e.g., United States v. Green, 25 F.3d 206, 210 (3d Cir. 1994) (stating that government "is entitled to considerable latitude to argue evidence and any reasonable inferences that can be drawn from the evidence" (quoting United States v. Werme, 939 F.2d 108, 117 (3d Cir. 1991))).

We also reject Robinson's assertion that there was insufficient evidence for a reasonable juror to find her guilty of Hobbs Act conspiracy.[4] Even setting aside whether the issue of Watkins-Brashear acting under color of official right is a legal question that Robinson should have raised in a pre-trial motion under Federal Rule of Criminal Procedure 12(b), the government presented more than enough evidence that NWCDC's Executive Director was acting under color of official right. See supra n.2.

Next, the District Court did not commit reversible error by applying a 4-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(3) because "the offense involved an

---

[4] Robinson did not preserve this Hobbs Act issue, and we accordingly must apply a plan error standard of review. See, e.g., United States v. Williams, 464 F.3d 443, 447 (3d Cir. 2006).

elected public official or any public official in a high-level decision-making or sensitive position," and Robinson likewise fails to show that her sentence was substantively unreasonable.[5] The Application Notes indicate that this enhancement provision should be broadly construed to include a "[a]n officer or employee or person acting for or on behalf of a state or local government, or any department, agency, or branch of government thereof, in any official function, under or by authority of such . . . branch of government" as well as those "(i) [] in a position of public trust with official responsibility for carrying out a government program or policy; (ii) acts under color of law or official right; or (iii) participates so substantially in government operations as to possess de facto authority to make governmental decisions." U.S.S.G. § 2C1.1 cmt. n.1(C), (E). "High-level decision making" is characterized "by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process." U.S.S.G. § 2C1.1 cmt. n.4(A). The District Court properly applied the enhancement because Watkins-Brashear "substantially" participated in the operation of Newark's water supply system and possessed the "authority" to make decisions regarding the City's water.

Furthermore, Robinson argues that the factors set forth in 18 U.S.C. § 3553(a) warranted a greater variance than two offense levels.[6] But the District Court

---

[5] "This Court reviews factual findings relevant to the Guidelines for clear error and exercises plenary review over a district court's interpretation of the Guidelines." United States v. Kirschner, 995 F.3d 327, 333 (3d Cir. 2021) (citing United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc)).

[6] Robinson had a total offense level of 32 and criminal history category of I, resulting in a recommended Guidelines range of 121 to 151 months. The District Court

7

appropriately took into account the § 3553(a) factors, the specific mitigating circumstances mentioned by Robinson (e.g., it "appreciate[d] the medical issues that [Robinson] outlined" in her sentencing submission, including "medical records that go back more than a decade" (A1092)), and the aggravating circumstances present in this case (for instance, the District Court found that the scheme "was an outrageous display of just pure corruption, plain and simple" and "was completely outrageous, especially as it relates to taxpayer money and especially as it relates to what the real purpose of the Watershed Commission was" (A1091)).  In the end, Robinson cannot demonstrate that "no reasonable sentencing court would have imposed" this sentence.  United States v. Tomko, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc).

III.

For the foregoing reasons, we will affirm the criminal judgment and sentence of the District Court.

varied down two offense levels to a recommended Guidelines range of 97 to 121 months. Robinson was sentenced to 108 months of imprisonment.