PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1756
_____

UNITED STATES OF AMERICA

v.

MICHAEL HUGHES,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:17-cr-00606-002)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 15, 2024

Before: BIBAS, MONTGOMERY-REEVES, and ROTH,
*Circuit Judges*

(Filed: September 3, 2024)

Michael Hughes
Hazelton USP
P.O. Box 2000
Bruceton Mills, WV 26525
    *Pro Se Appellant*

Amanda Reinitz
U.S. ATTORNEY'S OFFICE
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
    *Counsel for Appellee*

————————————

## OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

On plain-error review, we must consider the whole record—even when applying the categorical approach. Twice, Michael Hughes robbed people at gunpoint. He was convicted of two Hobbs Act robberies plus two gun charges under 18 U.S.C. §924(c). Now, for the first time, he argues that the District Court got the §924(c) jury instruction wrong by calling attempted Hobbs Act robbery a crime of violence. Though that instruction was wrong, he cannot show that it prejudiced him. Given the mountain of evidence that he completed the robberies, a properly instructed jury would still have convicted him. His convictions are sound.

## I. HUGHES'S ARMED ROBBERIES

In 2016, Hughes and Nashadeem Henderson robbed and shot two people. First, they robbed a drug dealer. Hughes had previously called the dealer and ordered some marijuana. But when they met up, Hughes pulled a gun on him and insisted that he hand over "everything." Supp. App. 75–76. The dealer gave up his drugs and cash but refused to surrender his phone and wallet. Hughes tried to shoot the dealer, but his gun misfired, so Henderson shot the dealer in the leg.

Four days later, Hughes and Henderson robbed a pizza delivery driver. This time, Henderson lured the victim to the scene by calling up a pizzeria and ordering pizza. When the delivery driver arrived and realized the threat, he dropped the pizza and said he "didn't have anything." Supp. App. 245. He tried to back away; Henderson shot him in the leg. Hughes then took cash from the driver's pockets, and the robbers fled with the money.

A federal jury convicted Hughes of two counts of Hobbs Act robbery. It found that Hughes had either "obstruct[ed], delay[ed], or affect[ed] commerce … by robbery or extortion" or had "attempt[ed] or conspire[d]" to do so. 18 U.S.C. § 1951(a). The jury instruction said the jury could convict Hughes if he had completed the robberies or just attempted them.

The jury also convicted Hughes of two gun crimes under § 924(c). This provision makes it illegal to use or carry a gun "during and in relation to [a] crime of violence." § 924(c). The jury instruction said that Hobbs Act robbery counted as a crime of violence; it did not say that the robbery had to be completed. Hughes now appeals, challenging the jury instructions on the

3

elements of §924(c) and the sufficiency of the evidence of Hobbs Act robbery.

## II. THE ERRONEOUS §924(C) JURY INSTRUCTIONS DID NOT PREJUDICE HUGHES

Hughes first argues that the District Court's §924(c) jury instructions misstated the crime-of-violence element. Because he never raised this objection at trial, we review for plain error. *United States v. Olano*, 507 U.S. 725, 731 (1993). Under *Olano*'s four-pronged test, he must show (1) that the court erred, (2) that the error is obvious, (3) that it "affected the outcome of the district court proceedings," and (4) that it "seriously affects the fairness, integrity or public reputation of [those] proceedings." *Id.* at 732–36 (brackets and internal quotation marks omitted). The District Court committed an obvious error. But because there was extensive evidence that Hughes took part in the crimes, the error did not affect the outcome.

### A. The District Court plainly erred by instructing the jury that even an attempted Hobbs Act robbery can support a §924(c) charge

A §924(c) conviction must rest on a predicate crime—here, Hobbs Act robbery. The predicate crime must require, as an element, "the use, attempted use, or threatened use of physical force against the person or property of another." §924(c)(3)(A). Yet not all Hobbs Act robberies are crimes of violence. Although completed robberies are, attempted robberies are not. *United States v. Stoney*, 62 F.4th 108, 112–13 (3d Cir. 2023) (completed robbery); *United States v. Taylor*, 596 U.S. 845, 851 (2022) (reasoning that one can attempt a robbery without using force or attempting or threatening to do so).

4

To tell whether Hughes committed a crime of violence, we apply the categorical approach. *Mathis v. United States*, 579 U.S. 500, 504 (2016). The Hobbs Act is divisible: it "list[s] elements in the alternative, and thereby define[s] multiple crimes," including completed and attempted robberies. *Id.* at 505. So we apply the variant known as the modified categorical approach, looking to documents like jury instructions to figure out "what crime, with what elements, [Hughes] was convicted of." *Id.* at 505–06; *Stoney*, 62 F.4th at 112.

The jury instructions, though, do not clear things up. We review them "as a whole" to determine "what a reasonable juror could have understood the charge as meaning." *California v. Brown*, 479 U.S. 538, 541 (1987) (quoting *Francis v. Franklin*, 471 U.S. 307, 315–16 (1985)); *see also Savarese v. Agriss*, 883 F.2d 1194, 1202–05 (3d Cir. 1989). The District Court told the jury that Hughes's predicate crime was a Hobbs Act robbery. But it had earlier explained that the jury could convict him of that crime even for attempting a robbery. Taken together, the jury may have reasonably understood those instructions to mean that attempted robbery is enough to convict under § 924(c). *See United States v. Dobson*, 419 F.3d 231, 238–39 (3d Cir. 2005). That misstated the crime-of-violence element and was an error.

We do not fault the District Court. At the time of Hughes's trial, the only circuit court to consider the question had held that attempted Hobbs Act robbery was a crime of violence. *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018). A year after the trial, so did we. *United States v. Walker*, 990 F.3d 316, 328 (3d Cir. 2021). But the Supreme Court over-turned those holdings in *United States v. Taylor*. Because settled

law now forecloses the District Court's approach, the error is now plain. *Henderson v. United States*, 568 U.S. 266, 279 (2013).

## B. The erroneous jury instruction did not influence the jury's verdict

Yet that plain error is not enough to reverse. Hughes must also satisfy *Olano*'s third prong by proving that the error affected the trial's outcome. *United States v. Jackson*, 849 F.3d 540, 555 (3d Cir. 2017). He was not prejudiced if "it is highly probable that the error did not contribute to the judgment." *United States v. Greenspan*, 923 F.3d 138, 149 (3d Cir. 2019) (internal quotation marks omitted).

The first two *Olano* prongs considered a purely legal question: how to apply the categorical approach. But the third *Olano* prong "requires a record-intensive factual inquiry." *United States v. Ali*, 991 F.3d 561, 575 (4th Cir. 2021) (Wilkinson, J.). We read the whole record to figure out why the jury convicted and whether different instructions would have changed its mind. So at this step, we are not constrained by the modified categorical approach's "limited class of documents." *Mathis*, 579 U.S. at 505. Rather, we scrutinize the full factual record to discern what predicate crime the jury found.

Here, the difference between a completed robbery and an attempted one comes down to whether property changed hands. *See Taylor*, 596 U.S. at 851–52. On these facts, the jury could not plausibly have thought that Hughes stopped short of taking his victims' property. The first robbery victim testified that Hughes took his marijuana and cash. As for the second robbery, an eyewitness saw Hughes go through the pizza delivery driver's pockets, and the pizzeria owner confirmed that the

driver would have had almost $100 on him. For both robberies, the witnesses' accounts were corroborated by surveillance videos. There was no contrary evidence or reason to believe that, after demanding the victims' belongings, Hughes stopped short of taking them. So if the District Court had instructed the jury that it had to find that Hughes *completed* the robberies, the jury would still have convicted. Because the instructional error did not prejudice him, the jury's § 924(c) convictions are sound.

### III. The Government Had Sufficient Evidence to Convict Hughes

Hughes also argues that the government lacked evidence that he took part in both robberies and that the pizzeria was engaged in interstate commerce. Not so. The first robbery victim identified Hughes in a photo array, in a surveillance video, and from the witness stand. And he testified that Hughes had robbed him. Hughes insists that the victim's testimony was unbelievable because he had "shot up half the city" and gotten paid by the government. Appellant's Br. 14–15. But the jury heard this impeachment evidence and still convicted. We "presume that the jury properly evaluated credibility," so we will not disturb its finding. *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992).

As for the second robbery, Hughes objects that the pizza delivery driver never testified. Even so, there was enough evidence that Hughes took part in that robbery too. After Hughes's mother answered the door and let police in, they found Hughes and Henderson sleeping upstairs in the same bedroom. When they searched the house, they found clothes matching those worn by the robber plus the gun that shot the delivery driver.

Hughes's phone records from the night of the robbery show calls and texts with Henderson and a call to the pizzeria. And on the surveillance video, one of the robbers walked like Hughes. A rational jury could easily have pieced this evidence together, concluding that Hughes and Henderson robbed the driver together.

Finally, there was enough proof that robbing the pizza delivery driver plausibly affected interstate commerce. The Hobbs Act requires only that a robbery have a "de minimis effect on interstate commerce"; that effect may even be "potential" rather than actual. *United States v. Walker*, 657 F.3d 160, 180 (3d Cir. 2011) (internal quotation marks omitted). It is enough that this pizzeria buys supplies from out-of-state vendors. Because the robbery interfered with the pizzeria's assets, it affected interstate commerce. *See id.* at 182.

\* \* \* \* \*

On these facts, the jury must have found that Hughes not only took part in two robberies, but also *completed* both. Though the judge should have instructed the jury that a § 924(c) conviction requires a completed Hobbs Act robbery, that instructional error did not affect the outcome. We will affirm the judgment of conviction and sentence.