NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3216
_____

UNITED STATES OF AMERICA

v.

DERON HOWELL,
                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-17-cr-00260-002)
District Judge: Honorable Billy Roy Wilson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
On June 4, 2021

Before: JORDAN, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: July 27, 2021)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Deron Howell was convicted of several offenses and sentenced to 511 months' imprisonment for his participation in two armed robberies. He appeals two convictions and his sentence, contending the court erred in its jury instructions and Sentencing Guidelines range calculation. We will affirm the convictions but remand for resentencing due to an error in the Guidelines range calculation.

I.

In 2017, Deron Howell committed two robberies with several accomplices who used firearms during the robberies. A jury convicted him of eight offenses in connection with the robberies, including two counts of using a firearm during a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c).

The first robbery involved $6,700 in gambling money for a video game tournament. Howell previously gambled on a video game tournament with some of the victims, and he invited them to a tournament in Pittsburgh. Howell asked the victims to bring $10,000 in cash as gambling money for the tournament, and they brought $6,700 for this purpose. The day of the tournament, Howell picked up the four victims—three from the airport and one from a Pittsburgh residence—under the pretense that he was taking them to the tournament. But instead of driving to the tournament, Howell took the four victims to an intersection in the Lincoln-Larimer area of Pittsburgh, where Howell's two accomplices emerged and held up the victims at gunpoint. The victims were forced to the ground by the armed accomplices while Howell located their tournament gambling

2

cash and other valuable personal belongings. Howell left the victims at the intersection and drove away with the stolen money.

The second robbery involved six pounds of marijuana. Howell arranged to purchase the marijuana from an individual, and the exchange was set to occur at this individual's home. Howell and two accomplices arrived at the home and while Howell was inspecting the drugs, the two accomplices held up the victims at gunpoint. As he loaded the marijuana into a backpack, one of the victims attempted to escape and was shot by one of Howell's accomplices. Howell and his accomplices fled with the marijuana.

The ten-count indictment filed against Howell and two codefendants charged Howell with eight counts for the two robberies. For the marijuana robbery, he was charged with conspiracy to possess with intent to distribute marijuana (Count One), possession with intent to distribute marijuana (Count Two), conspiracy to commit Hobbs Act robbery (Count Three), Hobbs Act robbery (Count Four), and using a firearm in furtherance of these drug trafficking crimes or crimes of violence in violation of 18 U.S.C. § 924(c) (Count Five). For the tournament-money robbery, he was charged with conspiracy to commit Hobbs Act robbery (Count Eight), Hobbs Act robbery (Count Nine), and using a firearm in furtherance of these crimes of violence in violation of 18 U.S.C. § 924(c) (Count Ten).

For both § 924(c) firearm counts, the indictment and jury instructions provided for alternative predicate offenses. For Count Five, the marijuana robbery firearm count, the indictment charged that Howell used a firearm during "drug trafficking crimes and crimes

3

of violence . . ., that is, conspiracy to possess with intent to distribute and distribute less than 50 kilograms of marijuana . . . possession with intent to distribute less than 50 kilograms of marijuana . . . and conspiring to commit and committing crimes of violence, that is, Hobbs Act Robbery." And the court instructed the jury that, to convict on Count Five, it must find Howell or his codefendant "committed a drug trafficking offense, that's Counts One and Two, . . . and/or a crime of violence, Counts Three and Four" and that they had "firearms available to assist or aid in the commission of crimes charged in Counts One, Two, Three, or Four." For Count Ten, the tournament-money robbery firearm count, the indictment charged that Howell used a firearm while "conspiring to commit and committing crimes of violence, that is, Hobbs Act Robbery." And the court instructed the jury that, to convict on Count Ten, it must find Howell used a firearm "during and in relation to a crime of violence, Counts Eight and Nine."

Further, for both Counts Five and Ten, the court instructed the jury on two derivative theories of liability—coconspirator liability and accomplice liability. On coconspirator liability, it instructed the jury that it may find Howell guilty of the § 924(c) violations if Howell "was . . . a member of the conspiracy," another "member[] of the conspiracy committed the [§ 924(c)] offense," this coconspirator "committed this offense within the scope of the unlawful agreement and to help [further] or achieve the objectives of the conspiracy," and "this offense was reasonably foreseeable" by Howell. On accomplice liability, it instructed the jury that it may find Howell guilty of the § 924(c) violations if he was an "active participant" in the relevant robbery and he knew an accomplice "would use or carry a firearm during and in relation to" the robbery.

4

The jury found Howell guilty of all counts, including the § 924(c) firearm counts, but found he did not brandish a firearm. It did not specify for which drug trafficking crimes or crimes of violence it found Howell used or aided and abetted the use of a firearm.

The court sentenced Howell to 511 months' imprisonment—151 months and 60 months, served concurrently, for the six robbery and drug trafficking counts plus 360 months of mandatory consecutive imprisonment for the two firearm counts. The presentence report calculated the total offense level to be 28 by grouping the six non-firearm counts into two groups—the marijuana robbery group (Group One), with an adjusted offense level of 26, and the tournament-money robbery group (Group Two), with an adjusted offense level of 22—and adding two levels to the highest group in accordance with Sentencing Guidelines § 3D1.4.[1] The Government objected to this calculation on several grounds, arguing that the offense level for Group One should be enhanced by a total of five levels and that the offense level for Group Two should be enhanced by two levels. The Government contended that this meant adjusted offense levels of 31 for Group One and 24 for Group Two—resulting in a one level enhancement under § 3D1.4, for a total offense level of 32. The court sustained the Government's objections and added five levels to Group One but, seemingly inadvertently, did not add

[1]    Howell was sentenced in October 2018, so the 2016 Sentencing Guidelines are applicable, as the 2018 Guidelines did not become effective until November 2018. U.S. Sentencing Guidelines Manual § 1B1.11 (U.S. Sentencing Comm'n 2016).
    Where, as here, there are multiple related counts, Sentencing Guidelines § 3D1 provides for the calculation of the total offense level by grouping closely related counts. The total offense level under § 3D1.4 is calculated by adding levels to the group with the highest offense level based on the relative offense levels of lower groups. USSG § 3D1.4.

two levels to Group Two. And under § 3D1.4, it calculated a total offense level of 33. After adding the mandatory 360 months for the firearm counts, it arrived at a guideline range of 511 to 548 months, and it imposed a sentence of 511 months.

Howell appealed. We withheld disposition of this case pending resolution of a relevant question of first impression before another panel of our Court.

## II.[2]

Howell challenges his convictions on the two firearm counts, contending that the jury instructions were erroneous. He also challenges his sentence, contending that the court erred in adding two levels under § 3D1.4. We disagree that his convictions were affected by the jury instructions, but we agree that the court committed reversible error in its Sentencing Guidelines calculation.

## A.

We first consider Howell's challenge to his firearm convictions on the basis that the jury instructions offered invalid bases for liability. Where a court instructs the jury "on multiple theories of liability, one of which is improper," and the defendant "failed to raise this issue in the District Court, the more stringent plain-error standard applies." *United States v. Duka*, 671 F.3d 329, 354 (3d Cir. 2011). Under this standard, the defendant has the burden of showing "(1) an error, (2) that is plain, and (3) that the plain error affects his substantial rights." *United States v. Aguirre-Miron*, 988 F.3d 683, 687 (3d Cir. 2021). And if he makes this showing, we exercise our discretion to correct the

---

[2] The trial court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

error only where it "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* (alteration in original) (citation omitted). We will first address Howell's contention that there was clear or obvious error in the jury instructions, before addressing whether any such error affected his substantial rights.

Howell contends the court erred in the jury instructions for his 18 U.S.C. § 924(c) firearm convictions on Counts Five and Ten because the instructions included an improper theory of liability. A defendant can be convicted under § 924(c) if they committed a predicate crime—a crime of violence or drug trafficking crime—and, during the predicate crime, used or carried a firearm.[3] Here, the jury was instructed that the potential predicate crimes of violence for Howell's § 924(c) firearm convictions were Hobbs Act robbery and conspiracy to commit Hobbs Act robbery. Howell contends this instruction was erroneous because neither of those crimes qualify as crimes of violence.

Howell's argument that Hobbs Act robbery is not a predicate crime of violence for § 924(c) is no longer viable in light of *United States v. Walker*, where we concluded that "Hobbs Act robbery is indeed a crime of violence for purposes of § 924(c)." 990 F.3d 316, 325 (3d Cir. 2021). In that case, however, we did not "consider whether conspiracy to commit Hobbs Act robbery is categorically a crime of violence under § 924(c)," though we noted that the government and several courts of appeals have acknowledged

---

[3]    *See* 18 U.S.C. § 924(c) (providing for consecutive mandatory minimum sentences for "any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm").

7

that "a conspiracy crime is not a proper 924(c) predicate." *Id.* at 323 n.10. We need not consider this conspiracy issue because even if conspiracy to commit Hobbs Act robbery were not a valid predicate for a § 924(c) conviction and the instructions were plainly erroneous on that point, the instructions nonetheless did not affect Howell's substantial rights. We will accordingly assume, without deciding, that conspiracy to commit Hobbs Act robbery is not a valid predicate for a § 924(c) conviction and turn to the substantial rights prong of the plain error standard.

Whether an erroneous theory of liability instruction affected a defendant's substantial rights, by affecting the outcome of the trial, "depends significantly on the context in which the instruction was provided and the other evidence presented at trial." *United States v. Andrews*, 681 F.3d 509, 522 (3d Cir. 2012). To determine if there is "a reasonable probability that the error affected the outcome of the trial" in this context, we consider the strength of the evidence on an alternative valid theory, the government's reliance on the invalid theory, and the extent the invalid theory is interwoven throughout the jury instructions. *Id.* at 521–22 (citation omitted).

The strength of the evidence on the alternative valid theory is the most important factor. "Where there is a clear alternative theory of guilt, supported by overwhelming evidence, a defendant likely cannot show that an instruction permitting the jury to convict on an improper basis was not harmless error." *Id.* at 521. For example, in *Duka*, "the indictment charged possession or attempted possession" of firearms under § 924(c) and "the jury instructions did not clearly distinguish between the attempt and actual possession theories of liability"—thus, they "contained both valid and invalid theories of

8

liability," as § 924(c) did not contain an attempt provision. 671 F.3d at 353–56. But the government argued and produced evidence only about actual possession of the firearms, not attempted possession. *Id.* at 355. Reviewing under plain error, we concluded that the defendants' substantial rights were not violated by the instruction on the invalid theory "because the evidence at trial clearly established [defendants'] *actual*, as opposed to attempted, possession of the firearms at issue." *Id.*

Howell has not met his burden of establishing that his substantial rights were affected because he has failed to show a reasonable probability the instructional error affected the outcome of the trial. The invalid theory Howell points to is that he committed the § 924(c) offenses by using a gun during conspiracies to commit Hobbs Act robberies, while the valid theory the Government points to is that Howell is guilty of the § 924(c) offenses by virtue of his association with those who used a gun during completed Hobbs Act robberies. Here, as in *Duka*, there is overwhelming evidence supporting the valid theory of liability. Several victims of each robbery testified that Howell prearranged and participated in the completed robberies in which firearms were used by his accomplices while he removed and seized the money, valuables, and drugs. And the Government presented no evidence that Howell or his accomplices used or carried a firearm at any time other than during the robberies. Further, cell-site location information placed Howell at the robberies on the dates of the robberies.

Howell seeks to undercut the valid theory of liability by attacking the Government's argument to the jury that it could convict based on coconspirator liability,

9

but this is similarly unavailing.[4] Howell points out that the evidence showed he did not

use a firearm during the robberies and that the Government thus pressed the

coconspirator theory of liability at closing argument to secure the § 924(c) convictions.

He contends this shows that the jury convicted him based on conspiracy as the predicate

offense. We disagree. The Government argued to the jury that Howell could be convicted

of the § 924(c) counts, even though he did not personally use a firearm during the crimes

of violence, through either coconspirator liability or accomplice liability. Even if, as we

assume here, conspiracy to commit Hobbs Act robbery were not a valid predicate

offense, guilt may nonetheless be found for the § 924(c) offense under *Pinkerton* based

on a coconspirator who also completed the armed Hobbs Act robbery. *See Reyes v.*

*United States*, 998 F.3d 753, 758 (7th Cir. 2021) (holding that a § 924(c) defendant

"could be found vicariously liable for his co-conspirators' actions under *Pinkerton*"

coconspirator liability); *cf. United States v. Ramos*, 147 F.3d 281, 286 (3d Cir. 1998).

And regardless of coconspirator liability, under the accomplice liability theory, "[a]n

active participant" in a valid predicate offense can be convicted of "aid[ing] and

abet[ting] a § 924(c) violation when he knows that one of his confederates will carry a

gun." *Rosemond v. United States*, 572 U.S. 65, 77 (2014). There is overwhelming

evidence that Howell had advance knowledge that guns would be used—he planned these

premeditated armed robberies with his accomplices. Accordingly, the evidence of

---

[4]    The term "coconspirator liability" as used by the Government referred only to derivative liability for the acts of coconspirators, which was established in *Pinkerton v. United States*, 328 U.S. 640 (1946). "Coconspirator liability" does not refer to the criminal offense of conspiracy to commit Hobbs Act robbery.

Howell's knowing participation in the completed armed Hobbs Act robberies overwhelmingly shows that he aided and abetted his accomplices' § 924(c) violations and thus violated § 924(c) himself.

Accordingly, assuming it was error to instruct the jury that it could find Howell guilty of § 924(c) for using a firearm during a conspiracy to commit Hobbs Act robbery, the error is not grounds for reversal.[5]

B.

We next turn to Howell's challenge to his sentence. Howell contends the court plainly erred in adding two levels to the total offense level under Sentencing Guidelines provision § 3D1.4. The Government agrees, and so do we.[6]

Because Howell did not object to the Guidelines calculation, we review for plain error. *United States v. Aguirre-Miron*, 988 F.3d 683, 687 (3d Cir. 2021). He thus has the burden of showing "(1) an error, (2) that is plain, and (3) that the plain error affects his substantial rights." *Id.* And if he makes this showing, we exercise our discretion to

---

[5]    Because the conduct alleged and evidence presented for both § 924(c) counts did not provide alternative factual bases for the convictions—for each count the factual basis was the commission of a robbery as part of a conspiracy with accomplices that used guns—Howell similarly fails to establish that any unpreserved error as to juror unanimity affected his substantial rights. *See United States v. Gonzalez*, 905 F.3d 165, 185 (3d Cir. 2018) (explaining that the "potential for juror confusion does not exist[] where 'the government did not allege different sets of facts'" that could each independently satisfy the elements of the offense (citation omitted)); *see also United States v. Cannon*, 987 F.3d 924, 948 (11th Cir. 2021) (concluding that an alleged juror unanimity error in the § 924(c) context was harmless where "the trial evidence established the same facts and time period underlying each [predicate] crime").

[6]    Howell also raises several other challenges to his sentence, but since we will remand for resentencing on the basis of the improper Guidelines calculation, we do not reach these other challenges, which can be addressed by the District Court in the first instance.

11

correct the error only where it "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* (alteration in original) (citation omitted).

Howell has shown that the court committed plain error. Sentencing Guidelines § 3D1.4 provides that when there are multiple groups of offenses, the total offense level is determined by the relative offense levels of the groups. U.S. Sentencing Guidelines Manual § 3D1.4 (U.S. Sentencing Comm'n 2016). Where, as here, there are two groups and the difference between their offense levels is nine levels or greater, the total offense level is not increased. *Id.* The court here concluded that the groups' offense levels were 31 and 22—a nine-level difference[7]—but it proceeded to increase the total offense level by two levels. This was a plain error. *See United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013) (noting that "improperly calculating the Guidelines range" is a "significant procedural error" (citing *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc))); *see also Aguirre-Miron*, 988 F.3d at 688 (noting an error may be plain error because it contravenes the "plain meaning of the Sentencing Guidelines").

Howell has further shown the other plain error requirements—that the sentencing error affected his substantial rights and will seriously affect the fairness, integrity, and public reputation of judicial proceedings. "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will" affect the defendant's substantial rights. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

---

[7] The court may have inadvertently excluded a two-level enhancement from its calculation of the lower group's offense level, which would have resulted in a seven-level difference between the groups and a one-level increase in the offense level.

Typically, "the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018). The Government does not point to any circumstances that take this case out of the ordinary ambit of incorrect Guidelines calculation cases that will satisfy the requirements of plain error review. And we see none. Indeed, had the court correctly calculated the Guidelines range, Howell would have been sentenced under a lower range, and a failure to correct this error will seriously affect the public reputation of judicial proceedings.

## III.

For the foregoing reasons, we will affirm Howell's convictions, vacate his sentence, and remand for resentencing.